JACOB PAULEY, as Administrator, etc., Respondent, *v.* STEAM GAUGE AND LANTERN COMPANY, Appellant.

In common law and prior to the passage of the act requiring the construction of fire escapes, etc., upon the outside of all factories three stories or over in height and of scuttles leading to the roof (Chap. 409, Laws of 1886, as amended by chap. 462, Laws of 1887), the owner of such a factory, not particularly exposed to the danger of fire from the character of the work carried on within it, was not bound to anticipate such danger, or to provide anything more than the ordinary means of egress, *i. e.*, stairs, halls, door-ways and windows.

*It seems* that said act imposed a duty upon the owners or occupants of the prescribed class of factories, for an omission to perform which an operative injured because thereof, may recover damages.

This duty, however, being created by the act, is measured by it and cannot be made to exceed its terms.

In an action to recover damages for the death of P., plaintiff's intestate, caused by the destruction by fire of defendant's factory, in which P. was employed, it was claimed that defendant had neglected to comply with said act and that this operated to cause the death. It appeared that defendant had placed two fire escapes upon its factory, which connected with each floor above the first, and were well fastened, perfectly secure, and of sufficient strength; their number, character and location were examined and approved after careful inspection by the proper officer, and reported by him as meeting the requirements of the law. The building had no scuttle leading to the roof with a stationary ladder, but one of the fire escapes, which was a ladder of iron rungs, was carried up to the roof giving access to it. It appeared that an inside ladder and scuttle would have been an utterly unavailable means of escape from the fire, however it might have been constructed. *Held*, that no omission of duty on the part of defendant was shown which rendered it liable.

It was claimed by plaintiff that the blinds to the windows were open, that when open they closed over one of the fire escapes, making access to it difficult, and that this established negligence. The inspector, with full knowledge of the presence and effect of the blinds, did not order them removed, but deemed the escape sufficient. One of defendant's workmen escaped by that route. There was no proof that any one was turned back because he could not reach the escape. *Held*, that the presence of the blinds did not establish negligence on the part of defendant.

The specific negligence charged by the plaintiff was the existence of a chute leading into the basement of the factory beneath one of the fire escapes, so that a person dropping from one of its lower rungs would be likely to fall into the opening and be returned to the factory. The evi-

dence showed that B. did not meet his death from this cause; that he did not descend the fire escape, but was suffocated in the smoke which filled the building.   *Held,* that no actionable negligence was shown. *Pauley* v. *S. G. & L. Co.* (61 Hun, 254), reversed.

(Argued January 22, 1892; decided February 2, 1892.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of October, 1891, which granted a new trial on exceptions to an order made at Circuit granting a motion for a nonsuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellant.   The burden of proof rested upon the plaintiff to establish that the death of the plaintiff's intestate was occasioned solely by the negligence of the defendant, and in the absence of proof indicating the manner of his death, there can be no presumption that it was occasioned without fault on his part, or by reason of any neglect of duty on the part of the defendant. (*Tolman* v. *S. B. & N. Y. R. R. Co.,* 75 N. Y. 198; *Cordell* v. *N. Y. C. & H. R. R. R. Co.,* 75 id. 330; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 id. 248; *Bond* v. *Smith,* 113 id. 278.) The death of the plaintiff's intestate not being occasioned in the manner described in the complaint, there can be no recovery in this case. (*Hunter* v. *N. Y., O. & W. R. R. Co.,* 116 N. Y. 615.) Assuming that the defendant was negligent with respect to the fire escapes provided for its factory, the evidence fails to indicate that the defendant's omission in that respect had any relation to the death of Pauley. (*Marble* v. *City of Worcester,* 4 Gray, 481; *Fogg* v. *Nahant,* 98 Mass. 478; *Healy* v. *Earle,* 30 N. Y. 208; *Pakalnishky* v. *N. Y. C. & H. R. R. R. Co.,* 83 id. 424; *Sheldon* v. *H. R. R. R. Co.,* 29 Barb. 226; *Morrison* v. *N. Y. C. & H. R. R. R. Co.,* 32 id. 668; *Harvey* v. *N. Y. C. & H. R. R. R. Co.,* 88 N. Y. 481; *Bajus* v. *S. B. & N. Y. R. R. Co.,* 103 id. 312; *Williams* v. *D., L. & W. R. R. Co.,* 39 Hun, 330; *Henry*

v. *S. I. R. R. Co.*, 81 N. Y. 373.) Again assuming that the fire escapes provided for the defendant's factory were defective and insufficient, no cause of action arose in favor of the plaintiff, by reason of any failure on the part of the defendant to comply with the provisions of the Factory Act. (*Jones* v. *Granite Mills*, 126 Mass. 84; *Bajus* v. *S. B. & N. Y. R. R. Co.*, 103 N. Y. 316; *Keith* v. *Granite Mills*, 126 Mass. 90; *Hickey* v. *Taaffe*, 91 N. Y. 204; Laws of 1887, chap. 462; Laws of 1886, chap. 409; Cooley on Torts [2d ed.], 783; *Atkinson* v. *Newcastle*, L. R. [2 Exch.] 441; *Almy* v. *Harris*, 5 Johns. 174; *Flynn* v. *Canton Co.*, 40 Md. 325; *Moore* v. *Gadsden*, 93 N. Y. 12; *Heeney* v. *Sprague*, 11 R. I. 456; *Grant* v. *Slater Mills*, 14 id. 388; *City of Rochester* v. *Campbell*, 123 N. Y. 405.) Assuming that this statute created a duty on the part of the defendant towards its employes to furnish fire escapes, the evidence fails to show any actionable negligence on the part of the defendant in the performance of such duties. (*Burke* v. *Witherbee*, 98 N. Y. 562; *Sweeney* v. *B. & J. E. Co.*, 101 id. 530; *Hickey* v. *Taffe*, 105 id. 26; *Stringham* v. *Hilton*, 111 id. 188; *Keeley* v. *O'Connor*, 106 Penn. St. 321; Laws of 1889, chap. 560.) The deceased, having acquired knowledge, equal to that of the defendant, of the character and position of the fire escapes and of the scuttle in the roof, assumed the risks and perils thus apparent and the plaintiff is thereby debarred from recovery. (*Gibson* v. *E. R. Co.*, 63 N. Y. 449; *Shaw* v. *Sheldon*, 103 id. 667; *Appel* v. *B., N. Y. & P. R. R. Co.*, 111 id. 550; *Williams* v. *D., L. & W. R. R. Co.*, 116 id. 628; *Buckley* v. *G. P. R. M. Co.*, 113 id. 540; *Grand* v. *M. C. R. R. Co.*, 83 Mich. 564; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274; *Marsh* v. *Chickering*, 101 id. 396; *Anthony* v. *Leeret*, 105 id. 591; *Oszokiscil* v. *E. P. Co.*, 19 J. & S. 217; 119 N. Y. 631; *Ryan* v. *P. M. Co.*, 57 Hun, 253.)

*Eugene Van Voorhis* for respondent. The failure upon the part of the owner or lessee of a factory to provide adequate means of escape in case of fire, is actionable negligence in

favor of a person who has suffered special damages thereby.
(*Schwander* v. *Birge*, 33 Hun, 186 ; Laws of 1887, chap. 462,
§ 10 ; Cooley on Torts, 654 ; 1 Thomp. on Neg. 558 ; 2 id. 994,
1232 ; S. & R. on Neg. §§ 8, 13 ; Pollock on Torts, 23, 24 ;
*Willy* v. *Mulledy*, 78 N. Y. 310 ; *McLaughlin* v. *Armfield*,
58 Hun, 376 ; *Abrayan* v. *Mfg., etc., Co.*, 16 N. Y. S. R. 750 ;
*McRickard* v. *Flint*, 114 N. Y. 222 ; Laws of 1886, chap. 409 ;
Laws of 1873, chap. 863, § 50 ; *City of Rochester* v. *Campbell*,
123 N. Y. 405.) It matters not whether the defendant was
owner or tenant ; the statute covers both. (*Schott* v. *Harvey*,
105 Penn. St. 222 ; *Keely* v. *O'Connor*, 106 id. 321 ; *Rogers*
v. *Tilly*, 20 Barb. 639.) It was for the jury to say whether,
or not, the plaintiff's intestate came to his death through the
failure of the defendant to provide adequate fire escapes.
(*Willy* v. *Mulledy*, 78 N. Y. 315 ; *Schwander* v. *Birge*, 33
Hun, 186.) There was enough in the case to warrant the jury
in finding that the deceased had been guilty of no contributory
negligence. (*Willy* v. *Mulledy*, 78 N. Y. 315 ; *Johnson* v.
*H. R. R. R. Co.*, 20 id. 65 ; *Connolly* v. *Poillon*, 41 Barb.
366 ; *Morrison* v. *N. Y., etc., Co.*, 63 N. Y. 643 ; *Kain* v.
*Smith*, 89 id. 375 ; *Tolman* v. *S. & B. R. R. Co.*, 98 id. 203 ;
*Galvin* v. *Mayor, etc.*, 112 N. Y. 223.) It cannot be said,
as a matter of law, that the deceased assumed any of the risks
growing out of the defendant's neglect to comply with the
statute in respect to fire escapes. (*Willy* v. *Mulledy*, 78 N.
Y. 315 ; 1 S. & R. on Neg. §§ 208, 217, 218 ; *Coombs* v. *N.
B. C. Co.*, 102 Mass. 572 ; *Reardon* v. *C. C. Co.*, 51 J. & S.
134 ; *Cullen* v. *Norton*, 52 Hun, 9 ; *McMahon* v. *P. H. I.
Co.*, 25 Hun, 48 ; *Hawley* v. *N. C. R. Co.*, 17 id. 115 ; 82 N.
Y. 370 ; *Kain* v. *Smith*, 89 id. 375 ; *McGovern* v. *C. V. &
R. R. Co.*, 123 id. 280 ; *Bulkeley* v. *P. H. & I. O. Co.*, 17
N. Y. S. R. 436 ; 117 N. Y. 645 ; *Booth* v. *B. & A. R. R.
Co.*, 73 id. 40 ; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 376.) The
plaintiff was not bound to make it appear that the death of
Pauley was caused by his falling from the ladder into the
chute. (*Pollard* v. *N. Y., etc., R. R. Co.*, 7 Bosw. 437 ; *C.
S., etc., Co.*, v. *N. Y. & E. R. R. Co.*, 3 Hun, 523.)

Finch, J.   The plaintiff's intestate lost his life in a fire which consumed the factory of the defendant, and did its work so swiftly and swept through all parts of the structure with such rapidity, that more than thirty of the men employed in the building were unable to escape.   The origin of the fire is unknown. No claim is made that it was occasioned by any act or omission of the defendant company, or was in any manner a product or result of its fault or negligence.   The ground upon which the action brought to recover damages for the death of the intestate actually rests is that the defendant was negligent in not providing sufficient and adequate means of escape from the building in the emergency of its taking fire, and that such negligence operated to cause the death of the intestate.   The plaintiff was nonsuited at the Circuit, but on exceptions heard at the General Term obtained a reversal of the ruling and an order for a new trial.   The defendant has appealed from that judgment to this court giving the usual stipulations, and we are now to determine whether upon any view of the facts the plaintiff was entitled to recover.

We are satisfied that if any duty devolved upon the defendant to anticipate the possible burning of its building and provide modes of escape adequate to that emergency, such duty did not exist at common law, and had its origin and measure in the statute which for the first time required in particular cases the construction of fire escapes.   (Laws of 1887, chap. 462, § 10.)   Prior thereto the owner of a building, not peculiarly exposed to the danger of fire from the character of the work to be carried on within it, was not bound to anticipate what was merely a remote or possible danger, or that its occurrence would put in jeopardy the lives of his workmen.   The ordinary means of escape by stairs and halls and door-ways and windows might reasonably be deemed sufficient, and the common law did not require, where the building was properly constructed for its intended use and purpose, that extra and unusual precautions should be adopted to protect the occupants against a danger for which the owner should be in no manner responsible, and which he was not reasonably bound to antici-

pate. That was held in *Jones* v. *Granite Mills* (126 Mass. 84), a case which we cited as authority in *Bajus* v. *S. B. & N. Y. R. R. Co.* (103 N. Y. 312), and the doctrine was repeated in *Keith* v. *Granite Mills* (126 Mass. 90). But with the growth of invention and the spread of the mechanic arts, came an increase in the number of factories employed in production, of the workmen gathered in their rooms, and especially in the size and height of the buildings. The attention of the legislature was first drawn to the evils attending the employment of women and children in such factories (Laws of 1886, chap. 409), and the next year to the possible danger to the operatives when employed in buildings three stories or more in height. (Laws of 1887, § 10, *supra*.) The very terms of this statute show that in ordinary buildings the usual modes of egress were deemed sufficient, and that there was no negligence in the common and usual reliance upon them; but that factories of greater height, in which were gathered operatives in considerable numbers upon upper floors, were not so easy to safely leave in case of fire, and required additional protection. The act, therefore, as amended in 1887, contained a section which reads thus : " Fire escapes shall be provided on the outside of all factories three or more stories in height connecting with each floor above the first, well fastened and secure and of sufficient strength. Stationary stairs or ladders shall be provided on the inside from the upper story to the roof as a means of escape in case of fire." The act imposed penalties for any disobedience of its provisions, and provided for the appointment of factory inspectors, whose duty it should be to examine such buildings and enforce the requirements of the law.

I am unable to agree with the contention of the appellant that the sole remedy under the statute was the public remedy which consisted of an enforcement of the penalties provided. The requirement of fire escapes was for the direct and special benefit of the operatives in such factories, and intended for their protection, and the rule applies that when a statute commands or prohibits a thing for the benefit of a person he shall have a remedy upon the same statute for the thing enacted for

his advantage, or for a wrong done to him contrary to its terms. We so held in *Willy* v. *Mulledy* (78 N. Y. 310), and sustained an action in behalf of the persons injured for the omission to provide fire escapes in accordance with the statute applicable to that case. We must hold, therefore, that the law of 1887 imposed a duty upon the owners or occupants of the prescribed class of factories, for an omission to perform which the operatives injured by the omission might recover damages.

But the duty so imposed is both created and measured by the statute. It is a new duty having no other origin and no other measure, and cannot be made to outrun or exceed the terms of the act. The defendants performed that duty. They placed two fire escapes upon their factory which connected with each floor above the first, and were well fastened, perfectly secure and of sufficient strength. Their number, character and location were examined and approved by the public officer appointed under the law, with whom the subject was fully discussed, and who, after the work was done and he had carefully inspected it, expressed his approval and reported to his superiors that this factory had in all respects obeyed the law. It is true that this building, which was five stories high on the side towards the court and seven stories high on the side towards the river, had no scuttle leading to the roof at the top of its upper story, with a stationary ladder provided for access to it. But it was shown that one of the fire escapes which was itself a ladder of iron rungs, instead of stopping at the upper floor was carried on up to the roof and was a permanent ladder giving access to it. While it was on the outside of the building instead of the inside, it was an iron ladder instead of a wooden one, giving permanent and fixed access to the roof, and neither the defendant nor the inspector were guilty of negligence in constructing and accepting it as a fit and suitable substitute for the inside ladder and scuttle. Indeed, in the fire which occurred the latter was shown to be an utterly unavailable means of escape, however it might have been constructed and maintained. Balconies leading to the

fire escapes were not required by the law, but were recommended by the inspector, and were placed near one of the fire escapes but omitted from the other, and when the work was done it met the full approval of the officer required to examine it.

Upon this state of facts it is impossible to say, as we look at the situation before the fire, that the defendant omitted any duty imposed upon it by the statute, or was negligent or careless in the due performance; and the plaintiff's counsel found it necessary to break the force of the proof by showing facts connected with the construction of the fire escapes which, as he claimed, made the latter an obedience to the law in form only, while disobeying it in substance and effect.

One of these facts, and that mainly relied on by the plaintiff, was the existence of a chute leading from the court into the basement and placed beneath the fire escape, so that a person dropping from its lower rung would be likely to fall into the opening and be returned again into the burning structure. This was the specific negligence charged in the complaint, and its theory of the manner in which the intestate met his death. If anything can be said to be clearly evolved from the horrible confusion of the tragedy described by the proof it is that the deceased did not meet his death in that manner and from that cause; that he never descended the fire escape or fell into the chute; but was suffocated in the smoke which filled the building, and went down, dead, into the basement with the falling floors. No one saw him at a window or on a fire escape. There is no trace of him in any such direction. What we do know is the frightful description of the panic on the fifth floor, where the deceased was employed, after escape downward by the stairs was barred by the smoke and flames, in which strong men lost their senses in a frenzy of despair, threw their arms about each other's necks, held back some who tried to escape, and waited in helpless terror for the death which they deemed inevitable. The flames pervaded the whole building, above the basement, almost instantaneously. They poured out of the windows and flowed over the fire escapes. Those

who had the courage and coolness to descend them were burned and blistered on their way, and tell us how some of their companions were turned back from the iron rungs by the puffs of fire which enveloped them. When the bodies of the dead were found, their location and situation disclosed the only truth we are ever likely to know. One group of eleven, interlocked and intertwisted so that it became necessary to take them out of the wreck in a mass, were found in the basement not far from the stairway, lying upon the fallen debris at about the center of its depth, and so buried both upon and beneath the wreck of the fallen floors. Another group of five was found near by at about the same level. Whether Pauley was one of the two groups, or lay somewhat separated from them; is not in all respects certain; but two things are certain, first, that his body was found at least eight or ten feet from the opening of the chute into the basement; and second, in about the center of the depth of the debris made by the fallen floors. The slightest reflection makes impossible any other inference than that he went down with the floors, which fell in one crash about one hour after the beginning of the fire, and when all those who had not escaped from the building were lying within it, dead. That accounts for his body being found upon the wreck of the floors beneath the fifth, and covered by the debris of the two floors and the roof above. It is absurdly impossible to imagine him crawling into that position from the chute. That, therefore, whatever its form or situation, had nothing to do with the death of the intestate as an operative cause.

The evidence, thus so far from tending to sustain the theory of the complaint, tends only to disprove it, and no judgment founded upon it can be sustained.

But the respondent and the General Term insist that some other theory may be adopted, and in order to do so, enter upon the realm of conjecture, and ask that a jury, in the utter absence of proof, may be allowed to guess that there was some negligence on the part of the defendant which might have tended to cause the death of the intestate. In this connection

the open blinds making an approach to one of the fire escapes difficult was referred to. The inspector testifies in substance that they formed no serious obstruction. He says: " I observed what the effect was upon the fire escape when those blinds were open. There was a little space left in the center that a man might come down on, but the blinds materially closed over the fire escape, leaving perhaps a foot in the center that it didn't cover. I did not measure it to see whether it was as wide as a foot. I think a man could reach it easy enough because the windows were close together; it wasn't a big distance to reach, just about the width of the blind; all he would have to reach over would be the blind." It is evident that the inspector, before the fire, with a full knowledge of the presence and effect of these blinds, did not deem them a serious hindrance to the use of the fire escape, gave no order for their removal, and deemed the escape sufficient within the law. One of the workmen did in fact escape by that route, though unable to say how he did it. What is claimed is that there is proof that some of the operatives fled to this escape, but could not use it on account of the blinds, and we are asked to permit a jury to guess or conjecture that Pauley was one of these, without any proof of the fact, and in the face of the evidence that no one who did use it or approach it saw him at all. Now, the proof does not show that any one was turned back because he *could not* reach the escape. That one could have done so we know, for it was done through all the heat and smoke and confusion. The witness Burkett says: " *Seeing* the blinds open I went back;" but he made no trial or effort. We are not satisfied that the presence of these blinds turned into actionable negligence the situation of the escape which a disinterested inspector had examined and approved. There was no place upon the building where a fire escape could be put which would not have its inconveniences, its possible perils, and might not, after an accident, invite criticism. We think the duty imposed by the statute was fairly and fully performed, and even if it was not, that we are not to resort to conjecture and permit a verdict to be based on bare possibilities alone.

For the fact to be conjectured is not even made probable by the proof. The groups of eleven and of five who went down with the floors and among or near whom the intestate was found, were those driven back from the elevator fire escape by the heat and smoke, whom George Burkett found lying on the floor in a suffocating condition as he crawled away; a crowd of twenty-five, who "got no further than that," and died where they lay. None of them were in Gaul's room, which opened upon the escape where the blinds were, for the witness on his way back from that locality found them in the wing, huddled together and choking with smoke. The proof not only fails to encourage the conjecture, but leaves it without justification, even as a guess. There is no ground upon which a finding that the death of the intestate was due to the chute or the blinds, or the absence of a scuttle which nobody reached and nobody tried to reach, can be sustained. A mere conjecture built upon a bare possibility will not suffice to transfer the money or property of one man to the possession and profit of another. As we said in *Bond* v. *Smith* (113 N. Y. 378), food for speculation will not serve as the basis of a verdict.

It is difficult not to sympathize with the sufferers from this deplorable accident, even at the expense of one's better judgment, but we must be governed by our conviction that no cause of action was established.

The order of the General Term should be reversed and judgment be entered on the nonsuit for the defendant, with costs.

All concur, except MAYNARD, J., taking no part.

Order reversed and judgment absolute for defendant on stipulation.