JOHN EASTWOOD, as Administrator, etc., of JAY W. EASTWOOD, Deceased, Respondent, *v.* THE RETSOF MINING COMPANY, Appellant.

*Motion for a new trial — proof of facts not pleaded — negligence in an action for injury must be proved — questions for the jury — employer's duty as to rules — contributory negligence, no presumption in regard thereto — plaintiff must prove its absence — presumption as to desire to preserve life.*

Upon a motion for a new trial made upon the minutes of the court, it must be assumed that the jury found in favor of the successful party on all conflicting evidence.

When one seeks to enforce the rule that facts proven in a case are not available unless they are pleaded, he must take that objection upon that ground on the

trial, and if the objection to the proof of the facts is not put upon that precise ground at the trial, it cannot be taken advantage of at any later time.

In an action brought to recover damages resulting from the death of the plaintiff's intestate through the defendant's negligence, the negligence of the defendant must be proved, and the jury in the absence of proof cannot be allowed to base its verdict upon any inference or guess that there was negligence on the part of the defendant which might have tended to do the mischief, and ordinarily no presumption of negligence arises from the mere fact that an accident has occurred.

It cannot be said that a claim of negligence is to be decided in such case as a question of law, simply because the material facts of the case are not in dispute. The court may only take the case from the jury where not only the facts are undisputed, but where only one set of inferences can be drawn from those facts and those inferences lead to only one conclusion.

It is the duty of all persons and corporations having many men in their employ in the same business to make and promulgate rules which, if observed, will afford protection to the employees. This is more necessary where the manner of doing business is such, that the danger or safety of an employee at any given time depends upon the way in which some other employee is engaged at the same time. In such a case as that, where the action of one employee may make that dangerous, which, if he took no action, would be safe, it is the duty of the common employer to make such rules as will enable the person whose safety is put at risk to be advised of the danger and to avoid it.

The employer is, however, only required to make rules to guard against such accidents and casualties as may reasonably be foreseen, and is not bound to use more than reasonable care in deciding whether rules are necessary.

In every case his duty is performed by the exercise of reasonable care in deciding in the first place whether rules are necessary, and in the second place in making such rules as appear to be sufficient, and the question in either case may be one for the jury.

When the question is whether the case was one in which rules ought to have been made, the fact that other people or corporations engaged in the same business had or had not found it necessary to make rules upon that subject, is one which may well be considered, but the fact that no such rules had been made by others is not conclusive against the necessity of making them in the particular case. It is merely a fact to be considered.

Where the business is complicated, the circumstances are those which do not often occur and the danger is not serious, it may well be that the fact that other people engaged in the same business have found no necessity for making rules, in a particular case, may be almost conclusive that such rules are not necessary, but where the circumstances are such that any person can see what might happen in a given case, and the danger is plain and obvious, the jurors are at liberty to infer that rules to protect the employee are necessary although the jurors have no experience in the particular business and although there is no evidence that other corporations in the same business have made rules for such cases.

In an action brought to recover damages resulting from the death of the plaintiff's intestate by reason of the alleged negligence of the defendant, there is no pre-

sumption one way or the other as to the absence of contributory negligence on the part of the deceased; the plaintiff is bound to prove the absence of contributory negligence on the part of the decedent or he fails in his case. The care which is required of a person in each case is that which might reasonably be expected from a person of his age and experience under the same circumstances and with the knowledge which he has on the particular subject.

There can be no presumption in the absence of evidence that the deceased did anything he ought not to have done; and it may fairly be presumed that he took such reasonable care for his safety as one of his age would under the circumstances be likely to do, and the presumption may always be indulged in in such cases that every man is desirous of preserving his life and keeping his body from harm.

APPEAL by the defendant, The Retsof Mining Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Livingston on the 26th day of March, 1894, upon the verdict of a jury, rendered after a trial at the Livingston Circuit, and also from an order entered in said clerk's office on the 26th day of March, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Satterlee & Taylor* and *Strang & Doty*, for the appellant.

*F. A. Mann*, for the respondent.

Present — DWIGHT, P. J., LEWIS and BRADLEY, JJ.

Judgment and order affirmed on opinion of RUMSEY, J., at Circuit.

The opinion was as follows:
RUMSEY, J.:

The plaintiff's intestate was a boy about fifteen years old, and at the time of his death was in the employ of the defendant, in a room known as the screening room. The business of the defendant was mining salt and preparing it for market.

Just off the room in which the plaintiff's intestate was at work was a large bin, holding many tons of salt, into which the salt of a certain grade was delivered from the machinery of the works. At certain times when the bin became nearly full it was necessary that some one should go into it for the purpose of freeing the mouth of the chute, through which the salt was delivered into the bin. To do this it was necessary to shovel away the salt which was accumulated

at the mouth of the chute leading into the bin. When the bin became full, the salt was drawn off by three chutes in the bottom of it. The drawing off of the salt through these chutes caused the salt on the top to settle with more or less rapidity, depending entirely upon the manner in which it was drawn off. It appeared from the testimony, and was not disputed, that if one was in the bin at the time the salt was drawn off and his feet became entangled in the salt which was running down to the lower chutes, it was very diffi-cult for him to free himself, and if he got into the salt above his knees it was almost impossible for him to get out unassisted. The chutes through which the salt was delivered out of the bin were situated in a row along one side of it at the bottom. Hanging from the top of the bin were ropes which, one standing in the bin might seize if he was in danger of being engulfed in the salt, and thereby drag himself out. On two or three sides of the bin, and at a height at which it would be necessary for a man to stand in shoveling the salt, was a narrow platform of one plank a foot or so wide, upon which a man might stand when he shoveled the salt away from the mouth of the chute. It appeared in the evidence, however, that the men who were engaged in shoveling in the bin were not accus-tomed to stand upon this plank, which was not in every respect con-venient for that purpose, but stood upon the salt, and that there was no rule of the corporation forbidding them to do so if they saw fit. On the day on which the plaintiff's intestate met his death, so much salt was in the bin that the delivery from the chute into the bin was impeded by the accumulation of salt at its mouth, and the plaintiff's intestate, at his own request, was sent into the bin for the purpose of shoveling it away.

It appears that he had never been there before for that purpose. He went into the bin, remained there a few minutes, came out for some purpose, went back and went to work.

Shortly after he went back the second time directions were given by the proper person that the salt should be drawn off from the bin, and one or more chutes at the bottom of the bin were opened for that purpose. After this had been going on for a few moments the plaintiff's intestate was missed. Search was made for him, but he was nowhere to be found in the building. It was then surmised that perhaps he might have been engulfed in the salt, which was

rapidly drawn off, and, after a large portion of the salt in the bin had been drawn off, the plaintiff's body made its appearance at one of the chutes and he was taken out dead. The position in which the body appeared will be considered later.

There was some dispute upon the evidence whether the bin was sufficiently light for a person inside to see conveniently about it. It appears upon the testimony offered by the plaintiff that the bin was quite dark, while the testimony of the defendant tended to show that one standing in the bottom of the bin, on an ordinarily clear day, could read ordinary handwriting without difficulty. In discussing the case, however, it must be assumed that the jury might have found the fact in this regard to be as claimed by the plaintiff. It is thought, however, that the fact itself is not of much importance.

The foregoing are all the facts which it is thought necessary to advert to or which were material upon the claim of negligence of the defendant.

It is claimed by the plaintiff that this negligence consisted in the failure to make rules on the part of the corporation which would regulate the drawing off of the salt when the men were in the bin, or which would provide for the safety of men who had occasion to be there when that process took place.

The question was submitted to the jury whether the defendant was negligent in failing to provide rules upon that subject, which should protect the men who were in its employ. The defendant excepted to the submission of that question to the jury, but took no exception to the manner in which the submission was made.

It is objected upon this motion that no such ground of negligence was stated in the pleadings, and for that reason it was improper to submit it to the jury. But no such position was taken upon the trial. The evidence upon that subject was admitted without objection, and it was not claimed at all during the trial that such evidence was not within the pleadings, or that the claim submitted was not properly presented by the complaint. It is settled that when one seeks to enforce the rule that facts proven in the case are not available unless they are pleaded, he must take this position at the trial, and, if the objection to the proof of the facts is not put upon that precise ground at the trial, it cannot be taken advantage

of at any later time. (*Voorhees* v. *Burchard*, 55 N. Y. 98.) In that case the facts which it was claimed were not pleaded were offered in evidence, but were objected to as immaterial. The referee overruled the objection and received the facts, and the case was decided upon these facts. The defense proved by them was not pleaded in the answer. But nevertheless, upon an appeal, both the General Term and the Court of Appeals held that the plaintiff could not avail himself of the point that the facts were not pleaded, unless he could put his objection to their admission upon the precise ground.

In this case there was no objection to the proof of the facts which are now claimed as constituting negligence, and the defendant, having allowed them to be proved without objection, cannot now insist that they shall be discarded from the case.

There is no doubt of the rule that in an action for damages on account of negligence the negligence of the defendant must be proved, and that the jury, in the absence of proof, cannot be allowed to base its verdict upon any guess or inference that there was negligence on the part of the defendant which might have tended to do the mischief. (*Pauley* v. *The S. G. & L. Co.*, 131 N. Y. 90, 98.) It is also the fact that ordinarily no presumption of negligence arises from the mere fact that an accident has occurred. (*Weston* v. *City of Troy*, 139 N. Y. 281, 282.) There is a class of cases, to be sure, in which the fact of negligence may be inferred from the mere happening of the accident, but the case at bar is not one of those.

It cannot be said that the claim of negligence is to be decided in this case as a question of law simply because the material facts of the case are not disputed. The question of negligence is to be submitted to the jury, not only when the facts are disputed, but when the undisputed facts are such that reasonable men may draw different inferences from them upon the question involved. The court can only take the case from the jury where not only the facts are undisputed, but where only one set of inferences can be drawn from those facts, and those inferences lead to only one conclusion. (*Gardner* v. *Mich. Cent. R. R. Co.*, 150 U. S. 349, 361.)

It is quite clear in this case that the question whether or not the case was a proper one for requiring the defendant to establish rules

for the government of its employees in drawing salt from this bin when men were engaged inside of it, was one as to which reasonable men might differ. The rule is well settled that it is the duty of all persons and corporations having many men in their employ in the same business, to make and promulgate rules which, if observed, will afford protection to the employees. This is the more necessary where the manner of doing business is such that the danger or safety of an employee at any given time depends upon the way in which some other employee is engaged at the same time. In such a case, where the action of one employee may make that dangerous, which, if he took no action, would be safe, it is undoubtedly the duty of the common employer to make such rules as will enable the person whose safety is put at risk, to be advised of the danger and to avoid it. (*Abel* v. *D. & H. C. Co.*, 103 N. Y. 581; *Slater* v. *Jewett*, 85 id. 61; *McGovern* v. *C. V. R. R. Co.*, 123 id. 281, 289.) To be sure the company is only required to make rules to guard against such accidents and casualties as may reasonably be foreseen, and it is not bound to use more than reasonable care in deciding whether rules are necessary. (*Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 582.) In every case its duty is performed by the exercise of reasonable care in deciding in the first place whether rules are necessary, and, in the second place, in making such rules as appear to be sufficient. But the question in either case may be for the jury, whether, in the first place, the company took reasonable care to conclude whether rules were necessary, or, in the second place, if they were, whether the rules thus made were proper for the purpose for which they were intended. When the question is whether the case was one in which rules ought to have been made, the fact that other people or corporations engaged in the same business had or had not found it necessary to make rules upon that subject, is one which might well be considered. But the fact that no such rules had been made is not conclusive against the necessity of making them. It is simply a fact to be considered. Where the business is complicated, the circumstances are those which do not occur often and the danger is not serious, it may well be that the fact that other people engaged in the same business have found no necessity for making rules for the particular case may be almost conclusive that such rules are not necessary.

But where the circumstances are such that any person can see what might happen in a given case, and the danger is plain and obvious, the jurors might be at liberty to infer that rules to protect the employee were necessary, although they had no experience in the particular business, and although there was no evidence that other corporations in the same business had made rules for such cases. (*Morgan* v. *H. R. O. & I. Co.*, 133 N. Y. 666.)

In the case at bar, it is evident that if a man were in the bin at work, standing upon the salt, he might very easily be engulfed so as to be unable to extricate himself, if the chutes below were suddenly opened. Starting from that fact, which is undisputed, the inference might very well be drawn that a well-devised set of rules, giving warning to the men who were in the bin, or forbidding the drawing off of salt when any one was in the bin, would conduce greatly to the safety of the men who had occasion to be there. There is nothing in the evidence which would lead the jury to believe that such a rule was impossible or even difficult to enforce, and it is quite clear that such a rule might be of great use in insuring the safety of the men who had occasion to be in the bin. For these reasons I think that it was proper for the jury to consider upon the question of the defendant's negligence, the failure to make rules for the government of its employees in this regard.

The question of the contributory negligence of the plaintiff's intestate is a very serious one. There was absolutely no evidence as to what occurred after the boy went into the bin the second time. All that is positively known is that the salt was set in motion after that time by drawing it off from the bottom, and that, in process of time, his dead body made its appearance at one of the lower chutes. It was presented head first. The arms were crossed under the forehead, and the eyes were closed. There were upon the body a few abrasions, but nothing very serious. It appeared from the testimony of certain witnesses that the salt was so heavy that a body going into the salt in a certain position could not be turned, but must come out of the bin in the same position. That is, if a man went into the salt with his feet down, he necessarily would come to the bottom chute in the same position, and so, if he went into the salt with head downwards, his head would first make its appearance at the lower chute. The defendant argues from this that it must

necessarily have been the case that the plaintiff's intestate lay down upon the salt and went to sleep with his head toward the place from which the salt discharged and so was drawn head first into the chute. If that fact appeared, it would be necessarily established that he was guilty of contributory negligence, but I cannot see that any such fact can fairly be inferred from the testimony. It appeared in the evidence that across the bin, at some distance below the top of the salt, were heavy timbers extending from one side to the other with narrow spaces between them. It might very well be that the body of the boy, caught upon one of these timbers, was turned so as to come head first to the chute. It might be that he fell in some way in the bin and thus was drawn into the chute head first. All that can surely be said is, that having been in the bin his body was presented head downwards at the bottom of the chute.

Can it be said from that fact alone that the intestate was guilty of contributory negligence or that there was a failure to prove his freedom from it? Of course there is no presumption one way or the other, but the plaintiff is bound to prove the absence of contributory negligence or he fails in his case, ( *Weston* v. *The City of Troy, supra.*) The care which is required of a person in each case is that which might reasonably be expected from a person of his age and experience under the same circumstances, and with the knowledge which he had upon the particular subject. In this case the boy who was killed was between fourteen and fifteen years old. He was mature for his age. He was wholly unacquainted, so far as appears, with the duty which he was set to do in this bin, and he had not been informed as to the extent or nature of the dangers which he might incur therein, if indeed it can be said that he knew there was any danger there. There can be no presumption, in the absence of evidence, that he did anything that he ought not to have done, and it may fairly be presumed that he took such reasonable care for his safety as one of his age, under those circumstances, would be likely to do. In all these cases the presumption may be made that every man is desirous of preserving his life and keeping his body from harm. (*Morrison* v. *N. Y. C., etc., R., R. Co.,* 63 N. Y. 643.) Whether he went to sleep or not was a matter which was to be inferred, if at all, by the jury. They might take into consideration all the presumptions, as well as what appeared from

the facts, and then it was for them to say upon the whole case, I think, whether the plaintiff had shown that the intestate had used proper care in looking out for his own safety.

For these reasons I am of the opinion that upon the whole it was not error to submit the case to the jury, and that a new trial must be denied.