(160 App. Div. 845)

### GOETZ v. DUFFY et al.

(Supreme Court, Appellate Division, Second Department. February 27, 1914.)

1. LANDLORD AND TENANT (§ 165*)—FIRE ESCAPES—STATUTES.

Labor Law (Consol. Laws 1909, c. 31) § 82, provides for the installation of fire escapes on the outside of every factory consisting of three or more stories in height, which shall have balconies not less than six feet in length or three feet in width connecting with the interior by easily accessible and unobstructed openings. Section 94, which defines a tenant factory as a building, separate parts of which are used by different persons as factories, provides that the owner of the freehold shall be responsible for the observation of the statute relating to fire escapes. The owner of a building used for factory purposes equipped it with sufficient fire escapes, but the lessee sublet part of one of the floors, and in making partitions access from part of the floor to the fire escapes was rendered difficult. Held, that the owner was not liable to servants of the subtenants for injuries sustained in a fire by reason of the partition; the provision requiring the landing to be accessible and connected with the interior by unobstructed openings referring only generally to the interior.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. § 165.*]

---

2. HEALTH (§ 32*)—FIRE ESCAPES—"FACTORY."

　　A portion of one floor of a building, though used for manufacturing purposes, is not a factory, within the purview of Labor Law (Consol. Laws 1909, c. 31) § 82, requiring every factory, consisting of three or more stories in height, to be equipped with fire escapes.

　　[Ed. Note.—For other cases, see Health, Cent. Dig. § 32; Dec. Dig. § 32.* For other definitions, see Words and Phrases, vol. 3, pp. 2642–2643.]

3. LANDLORD AND TENANT (§ 165*)—LIABILITY OF LESSOR.

　　The Labor Law not having imposed any liability on the lessee of one floor of a building, who sublet a portion of it. to another manufacturing company, the lessee is not liable for the death of a servant of its subtenant, who was killed in a fire owing to the inaccessibility of the fire escape; there being no common-law duty upon the lessee to render the building safe.

　　[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630, 631, 633–637, 640, 641; Dec. Dig. § 165.*]

Appeal from Trial Term, Queens County.

Action by Catherine Goetz, as administratrix of the estate of Michael J. Goetz, deceased, against Jane E. Duffy, individually and as executrix and others. From a judgment dismissing the complaint and denying her motion for new trial, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Thomas J. O'Neill, of New York City (L. F. Fish, of New York City, on the brief), for appellant.

George M. Pinney, of New York City, for respondents Duffy and others.

George C. Austin, of New York City, for respondents Keep and others.

STAPLETON, J. On the 11th day of November, 1909, the plaintiff's intestate, with several other workmen, was burned to death in a fire that occurred in the six-story factory building at 129–131 West Thirty-First street, in the borough of Manhattan. The building stood on the north side of the street, facing south, and its width, front and rear, was 50 feet. The defendant Duffy was the owner. The sixth or top floor was leased to defendant H. V. Keep Shirt Company, which sublet to the defendant Hetzel Company a portion in the southwest corner thereof, consisting of a rectangular space in dimension 23 feet wide by 35 feet deep. This space included about one-half of the frontage of the building and extended back about two-thirds of the building's length. The Keep Company retained for its own use the entire rear part of the floor as well as the entire easterly half.

Through the center of the floor, extending from the front towards but not completely to the rear, was a hallway about 10 or 12 feet wide. Leading from this hallway, well towards the front, were a stairway and an elevator, and at the rear of the hall a swinging door led into the Keep workroom.

The space sublet to the Hetzel Company was partitioned off by the Keep Company, at the Hetzel Company's request, before the latter en-

tered into possession and prior to the execution of the lease. There was also an inner partition that formed, in the southwest corner of the Hetzel premises, a room 7 feet wide by 18 feet long, running lengthwise from the front of the building and having the west wall of the hallway for its eastern side. This space was used as an office; the remaining space was used as a workroom. A door, 3 feet wide and 7 feet high (106), connected the office with the workroom, and another door, almost directly opposite the one just alluded to, led from the office into the hallway landing and to the stairs and elevator. The doors were fireproof. Where the rear partition of the Hetzel premises approached the west wall of the building, and extending diagonally from the partition to the wall, was an aperture characterized by the defendants as a door, by the plaintiff as a window, and by the court as an opening. It was 22 inches from the floor. There was an "opening" of similar shape on the Keep side of the partition; the two forming a triangle with the west wall as the base and the point where both met on the partition as the apex. In the east end of the partition was a small window seven feet from the floor. The partition extended from floor to ceiling, a distance of 10 feet. The building was equipped with fire escapes, erected on its rear wall. No part of the Hetzel premises opened directly on a fire escape; but had it not been for the condition of the door leading from workroom to office, to which allusion will be made hereafter, access to the fire escapes could easily have been had.

The business of the Hetzel Company was the manufacture of combs from ivory and celluloid. Six machines for that purpose were installed in the workroom, where, on the day of the casualty, the plaintiff's decedent and six others were at work. Scraps of celluloid were lying around; a bag containing celluloid stood near the door; and celluloid dust arose from the machines and settled upon the boards on which rested the switches by means of which the machines were started and stopped. When the switches were opened, sparks, engendered by electricity, would fly from them and alight upon the celluloid. One of those sparks fell upon some celluloid near the door and started the fire. An attempt was made to extinguish it with water, but without avail. The plaintiff's intestate ran to the door leading to the office— the obvious means of exit—but the door would not open. The door was closed most of the time, and when closed it locked automatically. The men evidently became panic-stricken. One ran to the V-shaped opening already described, and escaped into the Keep premises. He was badly burned. He attempted to make his exit by means of the hallway and stairs, but the flames had gained such headway that when he opened the door the flames leaped in and the fire escapes afforded the only means of safety. After emerging from the opening in the partition, he cast one look back and saw the plaintiff's decedent and the others struggling at the opening; each one trying to get out first through the narrow space.

[1, 2] The plaintiff, as administratrix, sued to recover damages, alleging that decedent's death was caused by actionable neglect. She alleged such neglect against the decedent's master, the lessee from whom the master had a sublease, and the owner of the building. Her com-

plaint against the lessee and the owner was dismissed, and from the judgment entered upon that direction this appeal is taken.

It is not asserted, and if asserted it could not be maintained, that any common-law duty was due to the decedent from the two defendants in whose favor the judgment went. The liability, if any, must have its foundation and limit in some statute. The plaintiff points to the Labor Law (Laws of 1909, c. 36). The provisions of that law which are pertinent to our inquiry are contained in sections 82 and 94. Section 82 reads:

"Sec. 82. Fire Escapes. Such fire escapes as may be deemed necessary by the commissioner of labor shall be provided on the outside of every factory in this state consisting of three or more stories in height. Each escape shall connect with each floor above the first, and shall be of sufficient strength, well fastened and secured, and shall have landings or balconies not less than six feet in length and three feet in width, guarded by iron railings not less than three feet in height, embracing at least two windows at each story and connected with the interior by easily accessible and unobstructed openings. The balconies or landings shall be connected by iron stairs, not less than eighteen inches wide, with steps of not less than six inches tread, placed at a proper slant and protected by a well-secured handrail on both sides, and shall have a drop ladder not less than twelve inches wide reaching from the lower platform to the ground. The windows or doors to the landing or balcony of each fire escape shall be of sufficient size and located as far as possible, consistent with accessibility from the stairways and elevator hatchways or openings, and a ladder from such fire escapes shall extend to the roof. Stationary stairs or ladders shall be provided on the inside of every factory from the upper story to the roof, as a means of escape in case of fire."

Section 94, so far as it is pertinent, reads:

"Sec. 94. Tenant-Factories. A tenant-factory within the meaning of the term as used in this chapter is a building, separate parts of which are occupied and used by different persons, companies or corporations, and one or more of which parts is so used as to constitute in law a factory. The owner, whether or not he is also one of the occupants, instead of the respective lessees or tenants, shall be responsible for the observance and punishable for the nonobservance of the following provisions of this article, anything in any lease to the contrary notwithstanding, namely, the provisions of sections seventy-nine, eighty, eighty-two, eighty-three, eighty-six, ninety and ninety-one, and the provisions of section eighty-one with respect to the lighting of halls and stairways; except that the lessees or tenants also shall be responsible for the observance and punishable for the nonobservance of the provisions of sections seventy-nine, eighty, eighty-six and ninety-one within their respective holdings. * * * The term 'owner' as used in this article shall be construed to mean the owner or owners of the freehold of the premises, or the lessee or joint lessees of the whole thereof, or his, her or their agent in charge of the property. The lessee or tenant of any part of a tenant-factory shall permit the owner, his agents and servants, to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner; and his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings to recover possession of real property, as provided in the Code of Civil Procedure. And whenever by the terms of a lease any lessee or tenant shall have agreed to comply with or carry out any of such provisions, his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings as aforesaid. Except as in this article otherwise provided the person or persons, company or corporation conducting or operating a factory whether as owner or lessee of the whole or of a part of the building in which the same is situated or otherwise, shall be responsible for the observance and punishable for the nonobservance of the

provisions of this article, anything in any lease or agreement to the contrary notwithstanding."

We may rest upon the assumption conclusively established by the evidence, and, we think, conceded by the appellant, that were it not for the alterations made by the defendant lessee in connection with the sublease to defendant Hetzel, the sublessee, the defendant owner discharged faithfully and efficiently every duty imposed upon her by the provisions of the statute quoted. The plaintiff contends that the owner should be held liable because the statute provides that the fire escapes should be "connected with the interior by easily accessible and unobstructed openings." Her counsel concedes in his brief:

"It is true that the technical meaning of this language may seem to refer to the immediate interior; but the liberal import of the language is that it be connected with all parts of the interior."

This phrase last quoted may not be read as if excised from the context of the statute, but must be read in connection with its associate provisions. It clearly has reference to the openings through the wall attached to which are the fire escapes. It was not designed that the statute should regulate the interior division of a factory building, and it is not required that escapes should connect directly with every partitioned section of the structure.

Plaintiff's further contention is thus stated by counsel:

"The part partitioned off for the factory of the Hetzel Company constituted a separate factory; and hence there were no fire escapes on the outside, or stairs to the roof, as required by the statute. If the part occupied by Hetzel is a separate factory, this proposition is unanswerable; and there seems no legal reasons why it should not be deemed a separate factory within the meaning of the act."

The statute imposed the duty of providing fire escapes on the outside of "every factory in this state consisting of three or more stories in height." We cannot agree that the portion of the floor let to Hetzel is a separate factory, within this plain description.

[3] The owner discharged her full statutory duty; no negligence was proved against her; and her judgment must be sustained. The tenant who made the sublease owed no common-law duty to the decedent, and none was imposed upon it by the statute invoked. The judgment in its favor was properly directed. Pauley v. S. G. & L. Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194.

The judgment and order appealed from should be affirmed, with costs. All concur.