LAFAYETTE WARD v. ELY-WALKER DRY GOODS BUILDING COMPANY, ALEXANDER M. and JAMES C. STEWART and the NATIONAL FIRE PROOFING COMPANY, Appellants.

In Banc, March 1, 1913.

1. **APPEAL: Uncontested Holding.** The Supreme Court is not called upon to review a holding of the trial court in favor of an appellant which is contested by no one.

2. **NEGLIGENCE: Falling Crowbar: Precaution.** A workman for the defendant Fire Proofing Company was standing on a scaffold on the fifth floor of a building and using a short crowbar to

pry boards out of their setting in a false floor. He laid the crowbar down so that its end protruded a few inches beyond the edge of the scaffold, and reached to take down a large board. In doing that he displaced a small board which in falling struck the end of the crowbar and sent it flying out the front of the building and down upon the plaintiff's head. *Held*, that such facts did not constitute negligence. No workman of ordinary care and caution could have anticipated such an occurrence.

3. **PLEADING: Matter in Petition Repeated in Answer: Legal Conclusions.** Where, in an action for personal injuries, a certain special ordinance was pleaded in plaintiff's petition, the defendants were not harmed by the trial court's action in striking that ordinance from defendant's answer, nor were they harmed because their allegations of what they conceived to be their rights under that ordinance were also stricken out, since they were mere statements of legal conclusions and therefore unnecessary and superfluous.

4. ————: **Striking Matter from Pleading: Evidence Afterward Admitted.** Where all their evidence on the subject was admitted, the defendants in an action for personal injuries were not harmed by the action of the trial court in striking from their answer their allegations as to the temporary vacation of the sidewalk upon which plaintiff alleges he was injured on account of defendant's negligence in failing to cover it while constructing a building.

5. **CITY ORDINANCE: Roofing Sidewalk While Erecting Building: Noncompliance: Injury to Workman.** A city ordinance requiring builders to place a roof over the sidewalks while erecting a building more than four stories high, is for the protection of all persons lawfully on the sidewalk, and among those persons must be included an employee of a subcontractor engaged in fire-proofing such building.

6. ————: ————: ————: ————: **Persons Liable.** Under a city ordinance requiring builders to place a roof over sidewalks near which buildings more than four stories high are being erected, and providing a penalty for its violation, both the owner who caused the erection of a building and the contractor who built it are liable to the plaintiff in damages for an injury which would not have occurred had they not failed to provide the required roof.

7. ————: ————: **Construction.** A city ordinance which provides that at least one-third of any sidewalk near which a building is being erected shall be kept open for traffic, and then, after other clauses, ends by providing that, if the building is more than four stories in height, and near the street line,

a roof shall be built "over such sidewalk," means that whatever part of the sidewalk is left open for travel, whether a third of it or all of it, should be covered by such roof.

8. ———: ———: ———: ———: Breadth of Provisions: Negligence. A provision in a city ordinance, that, if a "building to be erected is more than four stories in height," and near the street line, a roof shall be built over the sidewalk, to be maintained "as long as material is being used or handled on said street front and above the level of such sidewalk," is intended to protect persons lawfully on the sidewalk against injury from substances falling from the building, whether falling from the front or hurled from the inside, and that during all hours, at least while work on the building is in progress. Therefore, where plaintiff, as he crossed the sidewalk to enter a building of the kind specified in the ordinance, was injured by a crowbar which had fallen from an upper story through a window near which workmen on the inside were at that time removing false flooring, and although the injury occurred before the bricklayers began their day's work outside the building at the fourth floor, an instruction was properly refused which told the jury "that the ordinance mentioned in the evidence . . . specifically provides that such roof be maintained only so long as material is being used or handled on the street front above the level of such sidewalk . . . and if you believe and find from the evidence that at the time plaintiff sustained the injuries complained of, no work whatever was being done on the building mentioned in the evidence on the street front thereof," but that the crowbar was knocked out from inside the building, then the owner of the building and the contractor were not under any obligations to maintain a roof over the sidewalk, and verdict must be for them.

9. INSTRUCTIONS: Proper Comment on Failure to Undergo Surgical Operation After Injury. An instruction set out in the statement is *held* proper as to the effect to be given to the evidence regarding plaintiff's failure, after his injury, to have a surgical operation performed which might have helped him.

10. ———: Conflict of Evidence: Province of Jury. Where plaintiff alleges that he was injured while upon a sidewalk over which the defendants, in violation of a city ordinance, had failed to build a roof, and there was a conflict in the evidence as to whether the sidewalk had been completed and as to whether the space was so blocked by material as to put it out of use as a sidewalk, an instruction was proper, and did not ignore the evidence, which left it to the jury to find whether at the time of the injury the plaintiff "was walking on the sidewalk."

11. VERDICT: Passion and Prejudice. The Supreme Court refuses to hold that, under the facts in this case, the verdict was the result of prejudice on the part of the jury.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AS TO NATIONAL FIRE PROOFING COMPANY; AF-
FIRMED AS TO OTHER APPELLANTS.

*Watts, Gentry & Lee* for appellant National Fire
Proofing Company.

The demurrer to the evidence should have been
sustained because the undisputed evidence introduced
by plaintiff shows conclusively that the fall of the
crowbar upon plaintiff's head was a mere accident or
misadventure, without any negligence on the part of
the master. Railroad v. Oldridge, 76 S. W. 581; Tay-
lor v. Bush & Sons Co., 66 Atl. 236; Olson v. Andrews,
168 Mass. 261; O'Neil v. Railroad, 130 Fed. 204; Rail-
road v. Ryan, 82 Tex. 565; Boyle v. Fire Proofing Co.,
182 Mass. 93; Feneff v. Railroad, 82 N. E. 705; Helmke
v. Thilmany, 107 Wis. 216; McDonald v. Simpson-
Crawford Co., 114 App. Div. (N. Y.) 859; Boldt v.
Railroad, 18 N. Y. 432; Mele v. Del. & H. C. Co., 14
N. Y. Supp. 630; Walsh v. Cullen, 235 Ill. 91; Roland
v. Tift, 63 S. E. 133; Willmarth v. Cordoza, 176 Fed.
1; Ewald v. Railroad, 70 Wis. 420; 5 Am. St. Rep.
178; Higgins v. Railroad, 36 Mo. 418; Kappes v. Shoe
Co., 116 Mo. App. 154.

*Seneca N. Taylor* and *S. C. Taylor* for appellants
Jas. Stewart & Company and Ely-Walker Dry Goods
Building Company.

(1) The city ordinance pleaded by plaintiff did
not enure to his benefit. Its sole object and purpose
was to safeguard sidewalks kept open during the
course of constructing the building for pedestrians to
pass and repass on the street. Coal Co. v. Neal, 166
Ind. 458; Faris v. Hobers, 134 Ind. 269; Rohback v.
Railroad, 43 Mo. 187; Evans. v. Railroad, 62 Mo. 49.
(2) The law is firmly settled that where the act of

negligence complained of as causing injury is at most but the remote occasion of the injury and a subsequent act of negligence by a responsible person intervening was the immediate and proximate cause of injury there can be no recovery. 16 Am. & Eng. Ency. Law, pp. 428, 433, 436, 440; Wharton on Law of Negligence (1 Ed.), secs. 134, 137, 138; Shearman & Redfield on Negligence, sec. 26, on Contributory Negligence (2 Ed.), sec. 31; Hudson v. Railroad, 101 Mo. 14; Railroad v. Kellogg, 94 U. S. 469; Bishop on Non-Contractual Law, secs. 41 and 42; Foley v. McMahon, 114 Mo. App. 447; Powell v. Railroad, 76 Mo. 83; Henry v. Railroad, 76 Mo. 288; Reed v. Railroad, 50 Mo. App. 505; Steep v. Railroad, 85 Mo. 229; Stanley v. Railroad, 114 Mo. 606; Thompson v. Railroad, 14 Mo. 125; Tinsdale v. Norton, 8 Metc. 388; McIntire v. Roberts, 149 Mass. 450; Lewis v. Railroad, 54 Mich. 514; Welfare v. Railroad, 4 Q. B. 693; Mire v. Railroad, 7 So. 473; Railroad v. Powell, 41 S. W. (Tex. Civ. App.) 695; Kappes v. Shoe Co., 116 Mo. App. 171. (3) The judgment should be reversed because the court erred in sustaining the motion of plaintiff to strike out the affirmative defense pleaded by these defendants based on the special ordinance 41406 authorizing these defendants to excavate the entire space which had been used as a sidewalk and obligated them thereafter in due course to construct a sidewalk as specified in said ordinance. Campbell v. Railroad, 175 Mo. 166.

*J. F. Merryman* for respondent.

(1) The ordinance was passed for the benefit of the public—for the benefit of every man, woman and child in the city of St. Louis. Dickson v. Railroad, 124 Mo. 140; Cooley on Torts, sec. 336. (2) This is an action founded on the concurrent negligence of three joint tortfeasors and either one of the three is liable if his negligence concurred with that of the other and was a part of the direct and proximate cause. A defi-

nition of joint tortfeasors and a citation of a few only of the many, many authorities bearing on the case at bar will suffice. Cooley on Torts, sec. 37, p. 92; 17 Am. & Eng. Ency. Law (1 Ed.), p. 604; Lore v. Mfg. Co., 160 Mo. 624; Harrison v. Light Co., 195 Mo. App. 606; Brash v. St. Louis, 161 Mo. 437; Smith v. Builder's & Trader's Exchange, 91 Wis. 365, 30 L. R. A. 504.

ROY, C.—The plaintiff sued the Ely-Walker Dry Goods Building Company, the firm of James Stewart & Company, composed of Alexander and James C. Stewart, and the National Fire Proofing Company for damages for personal injuries, the amount claimed being $15,000.

The verdict was against all the defendants for the full amount claimed. The trial court forced a remittitur of $7000, and judgment was entered for $8000, from which the Fire Proofing Company took a separate appeal and the other defendants took a joint appeal. This opinion covers both appeals.

The Ely-Walker Company as owner of the premises in November, 1906, contracted with James Stewart & Company for the construction of a building of seven stories and a basement on the south side of Washington avenue between Sixteenth and Seventeenth streets in the city of St. Louis. The Fire Proofing Company subcontracted with Stewart & Company to do the fire proofing. The principal contract called for the construction of some other buildings, the total consideration being $1,156,047, and the amount to be paid the subcontractor being $128,000.

There was at the time of the making of those contracts an ordinance of the city, the material parts of which were as follows:

"Sec. 925. Extent of occupation of street and sidewalk.

"The extent of occupation of sidewalk and street to be covered by the terms of a permit for street obstruction or building, shall be as follows:  Such permit shall not authorize the occupation of any sidewalk or street or part thereof other than that immediately in front of the premises of the building upon which said permit is issued.  During the progress of building operations at least one-third of the permit granted shall at all times be kept free and unobstructed for the purpose of passage and clear of rubbish, dirt and snow. Such sidewalks must, if there are excavations on either side of the same, be protected by substantial railings, which shall be built and maintained thereon so long as such excavations continue to exist.  It is not intended hereby to prevent the maintenance of a driveway for the building site.  It shall be permitted, for the purpose of delivering material to the basements of the buildings, to elevate  such temporary sidewalk  to a height not exceeding four feet, above the curb level of the street; and in case the sidewalk is so elevated it shall be provided with good and substantial steps on both ends of the sides thereof.  If the building to be erected is more than four stories in height, and is set at or near the street line, there shall be built over such sidewalk a roof having a framework and covering, composed of supports and stringers of three by twelve timbers, not more than eight feet from centers, covered by two layers of two-inch planks.  Said roof shall be maintained as long as material is being used or handled on said street front, and above the level of such sidewalk."

"Sec. 927.  Penalty.  Any person who shall himself violate the provisions of the said next two preceding sections, or by another cause the provisions of the said next two preceding sections to be violated, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than twenty-

five ($25) dollars nor more than one hundred dollars. (R. C. 1892, sec. 278)."

Those sections were re-enacted on March 19, 1907, with the following addition thereto:

"And where excavations are made under or across any sidewalk, the street commissioner is hereby authorized to require such elevated temporary sidewalks to be erected so as to afford safe and convenient passage."

On March 1, 1907, preceding said re-enactment and while the work was in progress, a special ordinance was enacted, of which the material portion is as follows:

"Section One.     That Ely-Walker Dry Goods Building Company, a corporation under the laws of Missouri, its successors and assigns, be and they are hereby authorized and empowered to excavate, build and maintain areas under the sidewalks in city blocks eight hundred and twenty-seven and eight hundred and thirty-two, adjacent to the buildings being erected, or to be erected, on the properties leased to said Ely-Walker Dry Goods Building Company, as follows: Under the south sidewalk of Washington avenue from the east curb line of Robbins lane eastwardly three hundred and forty-three feet and four inches; under the east sidewalk of said Robbins lane from the south curb line of Washington avenue to the north curb line of St. Charles street; under the north sidewalk of St. Charles street from the east curb line of Robbins lane eastwardly three hundred and ten feet and seven inches; under the east sidewalk of Sixteenth street from the north curb line of Locust street northwardly one hundred and seventy-five feet and six and one-half inches, and under the north side of Locust street from the east curb line of Sixteenth street eastwardly, one hundred and sixty-six feet and ten inches, each such area to be equal in width to the width of the sidewalk over the same, measured from the building line to the

curb line.  Also to so construct and maintain the side-
walks over said areas, that for a width of not exceed-
ing seven feet measured from the building line, each
of said sidewalks adjacent to the building line shall be
composed of illuminating or prismatic glass tiling so
constructed as to sustain a uniform distributed weight
of two hundred pounds for each square foot thereof.
Also to excavate, build and maintain a tunnel seven-
teen feet wide under and across St. Charles street be-
tween the St. Charles street building lines of the re-
spective properties leased to said Ely-Walker Dry
Goods Building Company as aforesaid.''

The building was constructed at or near the street
line.  There was at no time a roof of any kind erected
over the sidewalk.  There was a swinging scaffold on
the outside all around the building for the use of the
brick masons, except that it was not over the main
entrance.  There was a driveway for vehicles through
the main entrance for the purpose of conveying mate-
rial into the building.  The swinging scaffold was fifty
inches wide and was about the level of the fourth floor,
to which the brickwork had reached at the time of the
injury.  The steel work was about finished.  There was
a force of carpenters, of which plaintiff was one,
whose business it was to construct the forms on which
the concrete flooring was laid.  A false floor of boards
was laid on temporary framework.  The concrete was
then laid, and, when it had sufficiently hardened, an-
other set of men removed the false work and the lum-
ber would then be taken up for use on the floor above.

Two men, Wendels and Sonselis, were working
very near a point over the main entrance.  Wendels
was on a scaffold on the fifth floor removing the boards
under the floor above.  The boards of the false floor
were not nailed to the framework which supported
them, but were simply laid thereon.  When the sup-
porting framework was removed, the boards of the
false floor remained adhering to the concrete.  Wen-

dels used a crooked bar of iron about three feet long, known as a "goose-neck crowbar," to loosen the boards one by one as he removed them. Having loosened one, a long board, he laid the bar down on the scaffold, the end sticking out over the edge of the scaffold a few inches toward the front of the building. Conselis was standing on the floor receiving the lumber as it was handed to him by Wendels. When Wendels took down the long board which he had just loosened, a short board two feet long and ten inches wide fell from its place above, and, striking the projecting end of the crowbar, sent it flying out of the front of the building, where it struck a beam as it went out, and then went on over, out and down upon the head of the plaintiff; rendering him unconscious and leaving a permanent depression in the skull. The evidence tends strongly to show that he is incapacitated for work and is permanently injured. There was also evidence tending to show that the operation of trephining would probably give relief, and that plaintiff had been advised by surgeons to have such operation, but had failed to do so. The surgeons testified that such operation would be more or less dangerous. There was strong evidence on both sides as to whether the plaintiff was on the sidewalk or out in the street outside the curb at the time he was hurt; and there was also a conflict of the evidence as to whether the sidewalk from the main entrance to the northeast corner of the building had been so blocked with building material as to put it out of use as a sidewalk for the time being. The old sidewalk had been removed and the area thereunder had been excavated. Over and across such excavation I-beams had been placed and a temporary sidewalk of longitudinal boards had been laid thereon. The evidence for defendants tended to show that only portions of the temporary sidewalk had been rebuilt, while that for the plaintiff was to the effect that it was all re-

built except some small holes for letting material down into the basement.

Plaintiff's evidence tended to show that he usually went to work at eight o'clock in the morning and that he had gone about seven-thirty in the morning to the office of the Fire Proofing Company at the northeast corner of the building and obtained his "working check," which every employee took out every morning, and walked up over the temporary sidewalk towards the main entrance; and that when about two feet east of the passageway at the main entrance and about three feet inside the curb, he was hit by the bar and injured. The petition alleged that all the defendants negligently failed to erect the roof over the sidewalk, and alleged that the acts of the employees of the Fire Proofing Company in causing the bar to be thrown in the manner stated constituted actionable negligence.

The petition alleged the existence of all the ordinances above mentioned. The answer of the Fire Proofing Company was a general denial. The other defendants filed an answer containing a general denial, and also alleging the existence of the special ordinance of March 1, 1907, above set out, in regard to excavation under the sidewalks, etc., and made the following allegation in regard thereto:

"These defendants further aver that by the terms of said city ordinance, said Ely-Walker Dry Goods Building Company was duly authorized and empowered to excavate the whole width of the sidewalk on the side of the building in question, and to vacate the use of said sidewalk mentioned in plaintiff's petition and to have and keep the same vacated from use as a sidewalk during the entire construction of said building; that in pursuance of the authority granted to said Ely-Walker Dry Goods Building Company by said ordinance, it did excavate the whole width of what had formerly been the sidewalk immediately north of said

building and did cut off from public and private use and fence off the space where said sidewalk had been, thus vacating the use of said sidewalk as said building company had the right to do under said ordinance, and that said sidewalk had been so cut off and vacated as a sidewalk from public and private use for a period of several weeks prior to plaintiff's alleged injuries, and remained in that condition at the time of plaintiff's alleged injuries.

"These defendants further aver that at the time of plaintiff's alleged injuries and for several weeks prior thereto, there had been no sidewalk on the north side of said building in question, nor had the time arrived in the construction of said building when it became the duty or when it was practicable or possible for the said Ely-Walker Dry Goods Building Company to reconstruct said sidewalk, covering the same with illuminating or prismatic glass tiling as required by said ordinance, and these defendants therefore say that the general ordinances pleaded by plaintiffs have no application to the case at bar."

The answer also pleaded contributory negligence. The plaintiff filed a motion to strike out all that portion of the answer in regard to the last mentioned ordinance and the rights and doings of the defendants thereunder for the following reasons:

"1st. That said special ordinance does not repeal the general ordinance of the city of St. Louis as set out in full in plaintiff's petition.

2d. That said special ordinance on its face shows and in its title declares, that it simply authorizes Ely-Walker Dry Goods Building Company to erect, build and maintain areas under certain sidewalks and to build and maintain a tunnel under and across St. Charles street, and the title and the ordinances show absolutely on its face that it does not even attempt to repeal the general ordinances of the city of St. Louis

as set out in plaintiff's petition, and is therefore no defense to plaintiff's cause of action."

The motion was sustained, exceptions were taken, a term bill of exceptions as to that matter filed, but such action of the court in sustaining that motion was not mentioned in the motion for a new trial.

The trial court held that the Fire Proofing Company was not liable for the failure to construct the roof over the sidewalk, and held that all the other defendants were liable for such failure if one of them was. The court refused instructions in the nature of demurrers to the evidence asked by each of the defendants.

Instructions 1 and 2 given for plaintiff were as follows:

"1. The court instructs the jury that the ordinances read in evidence declare that if a building to be erected in the city of St. Louis is more than four stories in height, and is set at or near the street line, there shall be built over such sidewalk, immediately in front of the premises upon which said building is to be built, a roof having a framework and covering composed of supports and stringers of 3x12 timbers, not more than eight feet from centers, covered by two layers of two inch plank; and that said roof shall be maintained as long as material is being used or handled on said street front and above the level of said sidewalk;

"And if the jury find and believe from the evidence that the defendants Alexander M. Stewart and James Stewart, doing business under the firm name of James Stewart and Company, were, on or about the 6th day of June, 1907, engaged in erecting the building referred to in the evidence and had charge of the construction of said building, that said building was more than four stories in height and was at or near the street line of an open public street known as Washington avenue between Sixteenth and Seventeenth

streets in the city of St. Louis, Missouri, and if the jury finds from the evidence that the said defendants failed to build or failed to cause to be built over the sidewalk immediately in front of said building on Washington avenue a roof of any nature or description, and that at said time material was being used and handled on said street front and above the level of said sidewalk; and if the jury further finds from the evidence that plaintiff on or about said 6th day of June, 1907, at about 7:30 o'clock in the morning, was walking on the sidewalk referred to above and while so walking on said sidewalk was struck on the forehead by the bar of iron referred to in the evidence, which said bar of iron had been negligently knocked off of one of the upper stories of said building by a servant of the National Fire Proofing Company, and that plaintiff thereby sustained the injury mentioned in the evidence; and if the jury further find and believe from the evidence that the failure of the defendants mentioned in this instruction, to-wit, Alex. M. and James Stewart, to erect the roof over the sidewalk as set out above directly concurred with the act of the party referred to above in causing plaintiff's said injury; and if the jury further finds from the evidence that plaintiff was exercising ordinary care at the time of his injury for his own safety, then he is entitled to recover against the defendants Alexander M. and James Stewart, doing business as James Stewart & Company.

"2. The court instructs the jury that if they believe and find from the evidence that the defendant the Ely-Walker Dry Goods Building Company entered into a contract with the defendants Alexander M. and James Stewart, doing business under the firm name of James Stewart & Company, whereby the building mentioned in the evidence was caused to be erected for it, and that said James Stewart & Company were the general contractors of the defendant, the Ely-

Walker Dry Goods Building Company, for the erection of said building, and were such contractors on or about the 6th day of June, 1907, and if the jury further find that no roof was erected over the sidewalk as referred to in instruction No. 1, and if the jury further find that under instruction No. 1 the plaintiff is entitled to recover against the defendants Alexander M. and James Stewart, doing business under the firm name of James Stewart & Company, then you should also find in favor of plaintiff against the defendant the Ely-Walker Dry Goods Building Company.''

And the court refused the following instructions asked by the Ely-Walker Company and by Stewart & Company:

''B. The court instructs the jury that the ordinance mentioned in the evidence, after providing for the erection of a roof over sidewalks in certain cases, specifically provides that such roof be maintained only so long as material is being used or handled on the street front above the level of such sidewalk. And the court instructs the jury that if you believe and find from the evidence that at the time plaintiff sustained the injuries complained of, no work whatever was being done on the building mentioned in the evidence on the street front thereof, but that the pinchbar mentioned in the evidence was knocked off one of the stories of the building, and was knocked from a point inside the front wall of said building and out through the wall of said building, then and in that case neither defendant Ely-Walker Dry Goods Building Company nor defendants Alexander M. and James C. Stewart were under any obligations to maintain a roof over the sidewalk mentioned in the evidence on said day, and were guilty of no violation of the ordinance mentioned in plaintiff's petition and your verdict should be for said defendants.

''C. The court instructs the jury that if you be-

lieve and find from the evidence that the pinch-bar men-
tioned in the evidence was knocked out from one of the
stories of the building mentioned in the evidence by
an employee of defendant National Fire Proofing
Company, and that said employee of said National
Fire Proofing Company, in so knocking said pinch-bar
out of the front of said floor, was guilty of negligence,
then and in that case your verdict must be for the
defendants Ely-Walker Dry Goods Building Company
and Alexander M. and James C. Stewart, even though
you believe and find from the evidence that said de-
fendants failed to maintain, at the time plaintiff was
injured, a roof over the sidewalk mentioned in the evi-
dence.

''D.  The court instructs the jury that the ordi-
nance mentioned in plaintiff's petition, after provid-
ing for the erection of a certain roof over sidewalks
under certain conditions, further provides that such
roof need only be maintained so long as material is
being used or handled on such street front above the
level of such sidewalk.  And the court instructs the
jury that plaintiff alleges in his petition that on the
6th day of June, 1907, defendants failed to erect and
maintain a roof though building materials were still
being used and handled on the street front mentioned
in the evidence above the level of the sidewalk.  And
the court instructs the jury that there is no evidence
whatever in this case to sustain said allegation of
plaintiff's petition that on said date any building ma-
terials were still being used and handled on the street
front mentioned in the evidence in the erection of
the building mentioned in the evidence above the level
of such sidewalk.

''E.  The court instructs the jury if you believe
and find from the evidence that the plaintiff on the
occasion in question was injured by a pinch-bar fall-
ing from the fourth floor of the building mentioned in
the evidence, and that a servant of defendant National

Fire Proofing Company placed said pinch-bar on a scaffold and thereafter, while removing a certain temporary flooring, caused or allowed a piece of wood to fall and strike the said pinch-bar in such a manner as to cause it to fall from the fourth story; and if you further believe and find from the evidence that said act of said servant of said National Fire Proofing Company in so causing said pinch-bar to fall was negligent; and if you further believe and find from the evidence that plaintiff himself was in the exercise of ordinary care at the time in question, your verdict must be in favor of plaintiff and against defendant National Fire Proofing Company. And the court instructs you that if you find the facts to be as above set out, then and in that case your verdict must be against defendant National Fire Proofing Company, whether you believe and find from the evidence that at the time plaintiff was injured he was standing on the sidewalk mentioned in the evidence or in the street. But if you believe and find from the evidence that the plaintiff at the time he was struck was standing in the street, you cannot, under any circumstances, find against defendant Ely-Walker Dry Goods Building Company or defendants Alexander M. and James C. Stewart.

"F. The court further instructs the jury, that the plaintiff alleges that the ordinance read in evidence required that one-third of the width of the sidewalk in question should be kept free and unobstructed for the purpose of passage, and clear of rubbish, dirt and snow; and it required in no event more than this one-third in width that was thus to be kept free and unobstructed for the purpose of passage should be covered with a roof; and the court further instructs the jury, that it was at the option of those whose duty is was to maintain such temporary sidewalk, to determine what particular part of such sidewalk should be so kept unobstructed for travel and covered with a roof If, therefore, the jury believe and find from the

evidence, that if those whose duty it was to keep one-third of said sidewalk free and unobstructed for the purpose of passage had been so kept and had been covered with a roof it would not have prevented the pinch-bar in question from striking plaintiff, then it is your duty to find a verdict in favor of the defendant Ely-Walker Dry Goods Building Company, and Alexander M. and James C. Stewart, even though under the evidence and instructions of the court you find for plaintiff and against the National Fire Proofing Company, on the alleged ground that an employee of said Fire Proofing Company negligently caused said pinch-bar to be thrown out of the building and injure plaintiff.''

Instructions 11 and 12 given for plaintiff were as follows:

"11. The court instructs the jury that if you believe and find from the evidence that the plaintiff was struck by the pinch-bar mentioned in the evidence and that when he was so struck he was not on the sidewalk north of the building mentioned in the evidence, but was north of the curb of said sidewalk in the street proper, then and in that case the plaintiff cannot, under any circumstances, recover against the defendants, or any of them, on the ground that the defendants or any of them had failed to build a roof over the said sidewalk.

"12. The court further instructs the jury that it was the duty of the plaintiff when injured to take such steps as an ordinary careful and prudent man would have taken in the exercise of ordinary care under the same circumstances to reduce his damages to the minimum. And if you find from the evidence that the plaintiff could, after his injuries, have had an operation performed on his head which would have improved his condition; and if you further find from the evidence that he was advised by a competent surgeon that such operation was necessary to be performed in

order to improve his condition; and if you further find from the evidence that such operation, had it been performed, would have greatly lessened his physical pain and mental anguish and greatly improved his health; and if you further find from the evidence that plaintiff in failing to have such operation performed failed to exercise ordinary care to improve his condition, then if you find for the plaintiff you should only allow him as damages such amount or sum as his damages would have aggregated if he had at said proper time had such operation performed.''

I. There are many questions raised on the appeal of the Fire Proofing Company which it is unnecessary to discuss here, for the reason that we do not think that any case was made against that defendant. The trial court held that it was not liable for the failure to erect a roof over the sidewalk, and we are not called on to review that holding, as it was in favor of the appellant, the Fire Proofing Company, and no one is contesting the correctness of that holding.

Negligence: Precaution.

The facts as to the falling of the crowbar did not constitute negligence on the part of the Fire Proofing Company. No workman of ordinary care and caution could have anticipated such an occurrence. It may very well be said that he could expect that a plank might probably fall from the ceiling to the scaffold, but it would be almost a gift of prophecy that would enable him to foresee that it would fall on the projecting end of the crowbar, and would so fall as to hurl it out of the building. ''The requirement is only to use such reasonable precautions to prevent accidents as would have been adopted by prudent persons prior to the accident. The prudence and propriety of men's doings are not judged by the event, but by the circumstances under which they act.'' [Fuchs v. City of St. Louis, 167

Mo. 1. c. 646; Chandler v. Gas Co., 174 Mo. 1. c. 329.]

Such being the case, the demurrer of the Fire Proofing Company to the evidence should have been sustained. [Christensen v. Metropolitan Street Ry. Co., 70 C. C. A. 1. c. 661.] Having thus disposed of the appeal of the Fire Proofing Company, all further references to the appellants must be understood as meaning the appellants other than the Fire Proofing Company.

II. Regardless of the question as to whether the action of the trial court in striking out a part of the answer has been properly brought to this court by the motion for a new trial, we hold that the defendants have not been injured by such action. The special ordinance of March 1, 1907, was pleaded in the petition, and it served no purpose to repeat it in the answer. That part of the answer setting out what the defendants conceived to be their rights under that ordinance was a mere statement of legal conclusions and therefore unnecessary and superfluous. The striking out of the allegations as to the temporary vacation of the sidewalk did not harm defendants, for the reason that all of the defendants' evidence on that subject was admitted by the trial court.

*Pleading: Conclusions of Law.*

III. We do not agree with appellants that the ordinance requiring a roof over the sidewalk was not intended for protection against injuries inflicted on this plaintiff under the circumstances of this case. The position of the appellants is stated in their brief as folfows:

*Negligence: Violation of Ordinance: Injury to Employee.*

"The plaintiff was hurt, as the undeniable· proof will show, as he was about to pass over the driveway in to the building in question. There is no requirement that the driveway should be covered with a roof.

The plaintiff was not using the sidewalk as a pedestrian of the type the ordinance was intended to protect, but he was about to enter the building over the driveway to begin work with the National Fire Proofing Company, for whom he had been working some days before his injuries. This ordinance was not designed or intended for the protection of employees of a subcontractor in any sense of the word; it was designed and intended for the protection and benefit of pedestrians who would have occasion to use the sidewalk, passing up and down the street.''

In support of their position they cite Bell v. Railroad, 72 Mo. 50, which was for personal injuries to one who was on the railroad track, but not at a public crossing. The plaintiff claimed that the failure of the operatives on the engine to give the signals for a nearby road crossing was the cause of the injury. This court said that the statute ''was for the benefit of persons at the crossing or approaching it.'' That case does not support the contention of the appellants. Is not the language of the court in that case broad enough to cover the case of any person ''at the crossing'' regardless of the question as to who he was, whence he came or whither he was going?

The case of Racine v. Morris, 201 N. Y. 240, was for personal injuries to a policeman who went through an open door into a freight elevator shaft in the building of the defendant. An ordinance required that such doors should be kept closed. The court said, speaking of the ordinance: ''Its language does not, nor does the language of the sections related thereto, limit its operations to any designated class or classes of persons. Upon the other hand, there are within it indications that all persons lawfully within the designated buildings were through it to be shielded.'' We hold that the ordinance in this case was for the protection of all persons lawfully on the sidewalk.

IV. The ordinance requiring a roof over the sidewalk imposed a duty upon the defendants making them liable for injuries occurring by reason of such failure, or which would not have occurred had such duty been performed.

Persons Liable.

It was said in Willy v. Mulledy, 78 N. Y. 310: "It is a general rule that whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of such duty, causing damage, gives a cause of action. Duty and right are correlative; and where a duty is imposed, there must be a right to have it performed."

In Koch v. Fox, 75 N. Y. Supp. 913, 917, the court said: "It may be conceded that in a proper case it is competent for the Legislature, under its general police power, to impose a new duty for the protection or safety of the public, or of persons occupying or in buildings, the violation of which, if it directly and without any intervening cause results in injury or damage, will give rise to a cause of action; and doubtless the Legislature may delegate this authority to a municipal legislature." And that case cited a long list of cases in support of the proposition.

It was held in Pauley v. S. G. & L. Co., 131 N. Y. 90, that there was no obligation at common law requiring the owner of a building which was not peculiarly subject to fire by reason of the character of the work to be carried on in it, to construct fire escapes. In 1887 a statute of New York required fire escapes for all factories three or more stories in height, and imposed a penalty for its violation. The court said: "I am unable to agree with the contention of appellant that the sole remedy under the statute was the public remedy which consisted of an enforcement of the penalties provided. The requirement of fire escapes was for the direct and special benefit of the operatives in such factories, and intended for their protection, and

248 Mo.—24

the rule applies that when a statute commands or pro-
hibits a thing for the benefit of a person, he shall
have a remedy upon the same statute for the thing
enacted for his advantage, or for a wrong done to him
contrary to its terms.''

The case of Brannock v. Elmore, 114 Mo. 55, was
for negligence in blasting without protecting the blast
with timber as required by the ordinance. The court
said: ''The disregard of the ordinance was in itself
an omission of duty sufficient to justify a verdict for
plaintiff.''

As to whether the failure to erect the roof over
the sidewalk was the *causa causans* of the injury, we
quote from the opinion of Justice MATHEWS in Hayes
v. Railroad, 111 U. S. l. c. 241: ''It is further argued
that the direction of the court below was right, because
the want of a fence could not reasonably be alleged
as the cause of the injury. In the sense of an efficient
cause, *causa causans*, this is no doubt strictly true;
but that is not the sense in which the law uses the term
in this connection. The question is, was it *causa sine
qua non*, a cause which if it had not existed, the in-
jury would not have taken place, an occasional cause?''

It was held by the trial court that if either the
Ely-Walker Company or Stewart and Company were
liable, the other would be also, and the appellants so
concede in effect in their brief. It was said in Koch
v. Fox, 75 N. Y. Supp. l. c. 917: ''Even though the
owner lets the entire work to an independent contract-
or, still manifestly he causes the erection of the build-
ing.'' In other words, the Ely-Walker Company
caused the erection of the building and failed to pro-
vide for a roof over the sidewalk, and Stewart and
Company built the building without such roof. They
are both liable for the result of such failure.

V. It may be conceded that under the ordinance
defendants were not bound to keep more than one-

Construing
Ordinance.

third of the width of the sidewalk open for travel. But it is the clear meaning that whatever part was open for travel, whether a third or more, should be protected by such roof.

VI. The court properly refused instruction B asked by the defendants. It was shown by all the evidence in the case on both sides that the work on the building was still in progress. The steel work was not quite complete. The brickwork was at the fourth floor. Certainly, within the meaning of the ordinance, material was still being used or handled on the street front above the level of the sidewalk. The brick masons had not gone to work that day, it being before eight o'clock, their hour of beginning work. The ordinance does not mean that it is for protection only during the hours when material is being used on the street front and only against injuries caused by the falling of material which is being used on the street front. It is intended for the protection of persons lawfully on the sidewalk against injury from substances falling from the building, whether falling from the front or hurled from the inside, and that during all hours, at least while work on the building is in progress.

Roofing
Sidewalk:
When
Required.

VII. The question as to the effect to be given to the evidence on the subject of plaintiff's failure to have a surgical operation performed was properly submitted to the jury in instruction 12.

Instructions:
Surgical
Operation.

VIII. Instruction 1 given for the plaintiff is criticised by appellants, who say: "This instruction utterly ignored the fact that the entire space where the sidewalk had been was removed by these defendants by authority of special ordinance granting to them the right to do so,

Conflicting
Ordinance.

and the space had been excavated; and that the sidewalk had been closed in such manner that the public could not pass or repass over the space where the sidewalk had been; and that the time had not arrived when these defendants could construct the new sidewalk as contemplated, and as they were bound to do by said special ordinance.''

It is sufficient to call attention to the terms of the instruction, which required that the jury shall find that the plaintiff ''was walking on the sidewalk referred to above.'' The jury could not so find if there was no sidewalk there, or if it was so obstructed that it could not be used as a sidewalk. If appellants desired that subject to be more fully covered by instructions it was their duty to ask proper ones on that subject.

It is true that the old sidewalk had been removed and the area thereunder excavated, and that the new permanent sidewalk had not been constructed. But it is also true that a part of the temporary sidewalk had been constructed, as conceded by the evidence on both sides.

There was a conflict in the evidence as to whether it had been completed, and there was a conflict of evidence as to whether that sidewalk was so blocked by material piled thereon as to put it out of use as a sidewalk. The instruction complained of left it to the jury to find whether at the time of the injury the plaintiff ''was walking on the sidewalk.'' They could not so find if there was no sidewalk at that place, nor could they so find if the sidewalk was so blocked as to destroy its use as a sidewalk. That instruction did not overlook any part of the evidence, nor did it assume the existence of controverted facts, and was properly given.

The foregoing opinion covers substantially all the points made by the appellants except the one that the

**Verdict: Prejudice.** verdict was the result of prejudice on the part of the jury. Under the facts in the case we are not prepared to so hold.

The judgment as against the National Fire Proofing Company is reversed, and it is affirmed as to the other appellants. *Blair, C.,* concurs.

PER CURIAM.—This cause coming into Banc from Division on a dissent, the opinion of Roy, C., is adopted, as modified, as that of the court. All concur, *Graves* and *Bond, JJ.,* in result.