THE CITY OF INDEPENDENCE, *Appellant*, v. OTT *et al.*,
*Executors*.

### Division Two, June 30, 1896.

**Negligence:** CITY : EXCAVATION ADJOINING STREET : LIABILITY: BUILD-
ING CONTRACT. Two owners about to erect business houses on their
adjoining city lots and co-operating to obtain uniformity in the arch-
itecture and to lessen the cost agreed on a common plan as to the
front and stipulated as to the use of a common stairway. There was
no duty on the part of either to pay for the house of the other, but for
convenience they estimated the whole cost and each was to pay in
proportion to the front feet of his property. *Held*, that the negligence
of one of the owners or of the contractor in leaving the excavation of
such owner's premises unguarded whereby a traveler on the street
sustained injuries did not create any liability against the other owner.

*Appeal from Jackson Circuit Court.*—Hon. C. L.
DOBSON, Judge.

AFFIRMED.

*Flournoy & Flournoy* for appellant.

(1) The general rule is that he who employs an
independent contractor to do work is not liable for the
negligence of that contractor, but to this general rule
there are exceptions: *First.* In case the work is neces-
sarily dangerous to the person or property of another.
*Second.* Or in case the person authorizing the work is
charged with the duty of seeing that it is carefully
done. *Third.* Or in case of work that unless carefully
done will necessarily or probably result in the creation
of a nuisance. The consensus of authority is that
work which calls for an excavation in a street or side-
walk falls within the foregoing exceptions and that he
who authorizes or directs the making of an excavation

in a public street must see to it that the same is carefully done, is properly guarded and lighted at night. Such is the duty he owes the public and he can not shift his responsibility onto the shoulders of an independent contractor. Cooley on Torts [2 Ed.], pages 643, 646; Bishop on Noncontract Law, sec. 605; 2 Dillon's Municipal Corporations, page 1056, pars. 1029, 1030; Campbell, Negligence, pages 158–160; 1 Shearman and Redfield, Negligence, par. 175; *Westfield v. Mayo*, 122 Mass. 100; *Woodman v. R. R.*, 149 Mass. 335; *Brannock v. Elmore*, 114 Mo. 55; *Jones v. McKinney*, 93 Ky. 471; *Wilson v. White*, 71 Ga. 506; *Water Co. v. Ware*, 16 Wall. 566. (2) If á person who is liable over to a city for damages caused by a defective street is so notified of the pendency of the suit against the city that the judgment binds him he is concluded on three points. *First*. That the street was defective. *Second*. That plaintiff was injured there while using due care. *Third*. That he suffered the amount of damage recovered, in fact is concluded on all issues that were determined in the former suit. In addition it is only necessary to show in the action for indemnity that the defendant caused or was responsible for the defect in the street which occasioned the injury. Van Fleet's Former Adjudications, page 1166, par. 575; Elliott on Roads and Streets, pages 656, 657; *Koontz v. Kaufman*, 31 Mo. App. 397; *St. Joseph v. R. R.*, 116 Mo. 637; *McDonald v. Lockport*, 28 Ill. App. 157; *Cohoes v. Morrison*, 42 Hun, 216; *Mayer v. Brady*, 81 Hun, 440; *Rogers v. R. R.*, 49 N. Y. 655; *Troy v. R. R.*, 49 N. Y. 657; *Rochester v. Montgomery*, 72 N. Y. 65; *Portland v. Richardson*, 54 Me. 46; *West Boylston v. Mason*, 102 Mass. 341; *Milford v. Holbrook*, 9 Allen, 17; *Faith v. Atlanta*, 78 Ga. 779. (3) This action by a municipality to recover from one responsible over to it is one of indemnity. It is the actual payment of the

damages that constitutes the cause of action. Van Fleet's Former Adjudication, page 1162, par. 574; *Newbury v. R. R.*, 25 Vt. 383; *City v. Parks*, 43 Iowa, 119. (4) Those who join the commission of a wrong are either jointly or severally liable therefor. *Simmons v. Everson*, 124 N. Y. 319; *Jack v. Hudnall*, 25 Ohio St. 255; *Klaude v. McGrath*, 35 Pa. St. 128; *Norwich v. Breed*, 30 Conn. 535. (5) A plaintiff who uses the record of another case as evidence is not bound to introduce the whole record, but only so much as sustains the issues in his behalf, and if the record contains matter of defense it is for the defendant to introduce the same.

*Wash Adams, Elijah Robinson*, and *A. M. Ott* for respondents.

(1) The contract between Payne, Ott, and Smith for the building of the houses was a several and not a joint contract, and therefore Ott was not liable for the act of Smith in leaving the excavation in front of Payne's lot unguarded. *Sublet v. Noland*, 5 Mo. 516; Bliss on Code Pleading, sec. 63; *Sallech v. Holt*, 47 Conn. 274; *Adams v. Ball*, 2 Vt. 9. (2) The legal effect of the Smith contract, whether joint or several, was for the court to determine and not the jury. *Brannock v. Elmore*, 114 Mo. 55; *Norton v. Higbe*, 38 Mo. App. 467; *Chapman v. R. R.*, 114 Mo. 542. (3) Liability in such cases is predicated upon the principle of law which makes a party responsible for the consequences of his own wrongful conduct. As Ott had no part in nor right over the work in front of Payne's lot, he was in nowise responsible therefor. *Village v. Bank*, 96 N. Y. 555. (4) The plaintiff's right of action sounds in tort, and ceased at Ott's death. *Davis v. Morgan*, 97 Mo. 79; *Stanley v. Bircher*, 78 Mo. 245; *Melvine v. Evans*, 48 Mo. App. 421. (5) The employer

is not liable for the negligence of an independent contractor, unless the work is necessarily dangerous, unlawful or constitutes a nuisance. *Independence v. Slack*, 134 Mo. 66; *Blum v. Kansas City*, 84 Mo. 118; *Barry v. St. Louis*, 17 Mo. 121; *Hilsdorf v. St. Louis*, 45 Mo. 98; *Morgan v. Bowman*, 22 Mo. 538; *Clark v. R. R.*, 36 Mo. 281; *Scammon v. Chicago*, 25 Ill. 361; *Clark v. Fry*, 8 Ohio St. 359; *Smith v. Simmons*, 103 Pa. St. 32; *Wray v. Evans*, 80 Pa. St. 102; Wharton on Negligence, sec. 818. (6) Excavating for an areaway under a sidewalk in a city by the owner of an adjacent lot is not an unlawful act. The license so to do, if not expressly granted, is implied. *Schweikhardt v. St. Louis*, 2 Mo. App. 581; *Clark v. Fry*, 8 Ohio St. 359; *Fisher v. Thirkell*, 21 Mich. 1; Dillon on Municipal Corporations, secs. 699, 700. (7) Ott was not bound by the result of the suit between Joel E. Ball and the city of Independence, because he had no opportunity to control and manage it. *Koontz v. Kaufman*, 31 Mo. App. 379, 410; *Whittaker v. McCormick*, 6 Mo. App. 117; *Strong v. Ins. Co.*, 62 Mo. 289; *Garrison v. Baggage Co.*, 94 Mo. 137; *Wheelock v. Overshiner*, 110 Mo. 100; *St. Joseph v. R'y*, 116 Mo. 636. (8) Joel A. Ball's right of action against Ott ceased when Ott died, because it sounded in tort. As the right of action of the city of Independence is derived from Ball, is subordinate to and dependent thereon, it also ceased at Ott's death. The principle is analogous to that which obtains in cases of subrogation. *Ins. Co. v. Erie Trans. Co.*, 117 U. S. 321; *Ins. Co. v. Trenton*, 42 Mo. App. 123. (9) Ott's liability does not depend upon the fact of his having received notice of the action brought by Ball against the city of Independence. *Port Jervis v. Bank*, 96 N. Y. 555; *St. Joseph v. Railroad*, 116 Mo. 644.

GANTT, P. J.—This is an action by the city of Independence, a city of the third class, under the laws of this state, to recover from the executors of Christian Ott, deceased, $2,933.13, the amount of a judgment, costs, and expenses paid by said city on a judgment obtained against it by the guardian of one Joel Ball, an insane person, for personal injuries sustained by said Ball from a fall into an excavation, alleged to have been made in the streets of said city by said Christian Ott and James E. Payne, in the lifetime of said Ott.

The facts upon which recovery is sought are as follow: In the year 1887 Christian Ott, senior, and James E. Payne were the owners of two lots adjoining each other on Liberty street in the city of Independence, the south lot, having a frontage of forty-four feet, was owned by Ott; the north of said lots, having a frontage of twenty-five feet, was owned by James E. Payne. Sometime in the year of 1887 both Ott and Payne concluded to erect business houses on their said lots. They contracted with T. B. Smith to erect said buildings.

At the trial the contract with Smith was lost and the only evidence of its contents appears in the evidence of Mr. Payne as follows:

"We (i. e., Payne & Ott) agreed upon a plan by which a building could be erected on our two separate lots. I was to pay for the construction of that part of the building on my lot, and he was to pay for that part of the building on his lot. * * * It (the building) was begun in June, 1887. * * * The contract was made with T. B. Smith, who was to excavate for the basements and sidewalk area. * * * The building was to be a brick, and the sidewalk protected by an area wall, and the buildings two stories high and were to contain two rooms on Mr. Ott's lot and one on mine

VOL. 135 mo—20

on the street floor, and were to be divided into rooms on the second floor, and a stairway was to be built between the two buildings to be common to the hallway above.   Mr. Ott was to pay in proportion to the number of front feet of his property, and I was to pay in proportion of the front feet in my property. * * * The object of the contract was to get as low a priced building as we could and to have uniformity of architecture. * * * We agreed that one stairway would be sufficient for both buildings, and that we would unite in the construction of a stairway and allow our tenants to use the stairway.   At the time of the accident the areaway was completed, and there was an eighteen inch stone wall between my cellar or areaway and Ott's.   There was no communication between the basement inclosing the areaway of my building and Ott's.   There was nothing in the contract which gave Ott the right to go upon my property and in any way interfere with, change or alter the work that was there being done for me by Mr. Smith.   There was no obligation in the contract by which Ott could have been made to pay for my building or I for Ott's.   There was nothing in the contract reserving any control in Payne or Ott over the work or of discharging any hands employed by Smith.   The lots were turned over to Smith, the contractor, for the purpose of building the buildings according to the plans and specifications, and the buildings were to be delivered when completed.''

While this building was under process of construction the sidewalk in front of the two lots had been excavated to its entire width and the area walls had been built.   On the eleventh of September, 1887, Ball, in passing along this walk, fell into the north end of this excavation and received injuries for which he sued the city and recovered judgment for $1,750.   The

averment of his petition was that the city wrongfully and negligently allowed and permitted this excavation to remain open, and unguarded at night by signal lights or otherwise and that his fall and injuries were caused by this negligence.

After the suit was brought the city attorney in behalf of the city notified Ott of the pendency of the suit; where the same was pending; the nature of the the suit; that he might appear and defend the same; but he made no appearance thereto.

Subsequently Ball became insane and John W. Modie was appointed his guardian and the cause then proceeded in his name.

At the trial the circuit court sustained a demurrer to the evidence and the city appeals.

The learned counsel for the city, anticipating that the executors would attempt to justify the circuit court on various grounds, have discussed five distinct propositions upon which the court might have sustained the demurrer to the evidence.

It will not be necessary for this court to determine any of those questions if we shall conclude that under the contract for his building Ott did not employ Smith to excavate the area into which Ball fell and was injured.

We agree with the counsel for the city that the question is not so much what was the purpose of the excavation and not at all in front of whose building it was dug, but under whose direction and by whose authority had the contractor made this excavation under the sidewalk? And whose agent was he when he left the excavation unguarded? If the contract fairly construed was a several contract between Payne, Ott and Smith, that is to say, that Ott, while cooperating with Payne to secure uniformity in the architecture of their several buildings, simply agreed

upon a common plan as to the front of the two buildings and stipulated for the use of a common stairway and yet there was no obligation on the part of Ott to pay for the building of Payne's house and none whatever on the part of Payne to become liable in any way for Ott's house but for convenience merely they figured upon the whole cost and each was to pay and be responsible solely for his own building and in no manner liable for the other's, then it is plain that the excavation in front of Payne's lot must be held to have been made as a matter of fact under the authority and by the command of Payne, and Ott had no part in causing it to be made.

This, we think, is the proper construction of this contract. Mr. Payne testifies "there was nothing in the contract which gave Ott the right to go upon my property and in any way interfere with, change or alter the work that was there being done for me by Mr. Smith. There was no obligation in the contract by which Ott could have been made to pay for my building or I for Ott's." In the absence of an express authority no reasonable man would presume to excavate an areaway in front of another's building, and the evidence should be very clear and explicit to justify a court or jury in finding that an adjoining proprietor had purposely made and maintained a nuisance in front of his neighbor's property.

We do not think the contract between Ott and Payne and Smith should be construed to impose upon Ott and Payne a joint liability for what Smith separately did for each. Stripped of the one circumstance that they desired uniformity in the architecture of their buildings and conceived the idea that they could accomplish that better by employing the same contractor and that they could each get his own work cheaper by each giving the same builder their jobs at

the same time, there does not appear to be any principle of joint contract in the case. We draw the conclusion from Mr. Payne's evidence that not only the building but each man's share of the excavation was his own separate affair for which the other was in no sense responsible.

Ott, senior, then, having never employed Smith to make the excavation in front of Payne's lot and having no contract with Smith jointly or severally to build Payne's house, it follows that any negligence of Smith or Payne in leaving the excavation unguarded cast no liability on Ott and neither he nor his executors can be required to respond for any damages flowing therefrom.

As all other questions in the case hinge upon this one and as the plaintiff can under no circumstances recover, it is unnecessary to discuss the other points in the brief. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.