Cheryl **MARTINEZ**, Individually and as next Friend of Vince M. Martinez, Appellants,

v.

**MIDLAND BANK & TRUST CO.**, et al., Respondents.

No. WD33284.

Missouri Court of Appeals, Western District.

April 12, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1983.

Application to Transfer Denied June 30, 1983.

Robert K. Ball, II, Theodore D. Barnes, Kansas City, for appellants.

Edward W. Mullen, Paula Fulks-Vonder Haar, Kansas City, for respondents Midland Bank & Trust Co., North Star Inv. Co. and W.R. Gibson.

James Borthwick, Penni L. Johnson, Kansas City, for respondents Dave Cross and Missouri Public Service Co.

Sylvester Powell, Jr., Lance W. LeFevre, Kansas City, for respondents Stanley and Laverne Grace.

Paul L. Wickens, Lindsay K. McFerrin, Kansas City, for respondent Unity School of Christianity.

William G. Beck, Kansas City, for respondent City of Lee's Summit, Mo.

Before MANFORD, P.J., and WASSER-STROM and KENNEDY, JJ.

WASSERSTROM, Judge.

Rene Martinez died on March 20, 1979, as the result of the collapse of a trench in which he was working during the progress of a sewer project. His widow and child collected Workmen's Compensation death benefits from Gibson & Bowles, Inc. ("Gibson & Bowles"), Martinez' employer. They then sued as plaintiffs in this action for damages against the following third parties: Midland Bank & Trust Company ("Midland"), Mersco Realty Co., Inc. ("Mersco"), North Star Investment Company ("North Star"), Missouri Public Service Company ("MoPub"), Western Electric Company ("Western Electric"), Stanley S. Grace and Lavern M. Grace ("Graces"), Unity School of Christianity ("Unity School"), Dave Cross ("Cross"), W.R. Gibson ("Gibson"), John Mehrer ("Mehrer") and the City of Lee's Summit, Missouri ("the City"). Defendants Midland, North Star, MoPub,

Graces, Unity School, Cross and the City filed motions for summary judgment. Gibson filed a motion to dismiss which was treated as a motion for summary judgment. All said motions were sustained and made final for purpose of appeal. The present appeal by plaintiffs was generated by that ruling.

The following facts appear from plaintiffs' petition. Defendants Midland, Mersco, North Star, MoPub, Western Electric, Graces, Unity School, Cross, and the City all own land within the City. Prior to March 20, 1978, all of those defendants (with the exception of the City) "undertook through contract with Gibson and Bowles, Inc., installation of a sewer line on their property" and the "construction of such sewer on the property of said Defendants, aforesaid, was additionally undertaken by the City of Lee's Summit, Missouri, jointly with said property owners" and that defendant Gibson "was in general control and supervision over such project as the executive officer of Gibson and Bowles, Inc. . . . "

The petition further stated that as part of the sewer project it was necessary to dig a ditch approximately 15 feet in depth in which to lay the sewer line pipe and that such work was an inherently dangerous condition and activity unless adequate precautions were taken to avoid such danger. The petition proceeded that the defendants and each of them were negligent in failing to shore or undertake other precautions to avoid walls of the ditch caving in, by allowing the operation of heavy equipment in and on top of the ditch, in failing to utilize any equipment to protect the deceased from danger of cave in, and in permitting the ditch to remain in an open condition prior to the date of Martinez' death.

The following additional facts appear from answers to interrogatories and from affidavits filed in support of the various motions for summary judgment. Gibson is not only the president and a principal stockholder of Gibson & Bowles, but in addition he is chairman of the board and a 35% stock owner of Midland and president and a 50% stock owner of North Star. In 1978, Mid-

land was planning to construct a new bank building and in that connection was going to need sewer service. Gibson knew that the other property owners in the vicinity would likewise need or already needed sewer service to serve their respective properties and thus had an interest in obtaining sewer service. Gibson knew that it would be far cheaper and quicker to get the sewer line built if each property owner would agree to contribute voluntarily rather than having to go through the formalities of setting up a sewer district, assess benefits, and have formal plans and specifications prepared and seek bids. He therefore got in touch with each of the defendant landowners, discussed the proposed sewer project, and explained that the state was about to do some highway construction and the project would be far more expensive if not completed prior to that construction.

After what seems to have been considerable informal discussion, Gibson addressed a letter to each of the property owners on the stationery of Gibson & Bowles under date of December 27, 1978, as follows:

"[Addressed to each property owner]
          Re:  50 Highway Main Sewer
               Lee's Summit, Missouri
[Dear_____:]
I think we finally have all the pieces put together on the above subject sewer. The plans have been approved and all contributors are in agreement.
This sewer will serve all our properties as shown on the enclosed Plans. You will find herewith:
1.  Three copies of the Escrow Agreement which will also serve as a contract for Gibson & Bowles.
2.  One copy of the construction plans prepared by Larkin & Associates.
Please execute and return two copies of this agreement along with your check in the amount of [$_____] to the City of Lee's Summit. Mail or deliver to:
          Mr. Robert G. Keefe,
          Finance Director
          City of Lee's Summit
          City Hall—220 S. Main St.
          Lee's Summit MO 64063.

Please give this matter your very earliest attention. Time is rapidly running out on us. The Missouri State Highway Commission is letting the section of I–470 East from Highway 50 January 5, 1979. We must install that section of pipe crossing their right-of-way prior to January 31, 1979. This is no problem if we have back in our hands all contributor's agreements by January 15th.

Any questions, please call.

Sincerely,

/s/ W.R. Gibson

W.R. Gibson"

In response to that letter, defendants Midland, Grace, Cross, MoPub and Unity School and also Mercantile Stores, Inc. each signed an individual, separate copy of an Escrow Agreement which read as follows:

"To the City of Lee's Summit, Missouri:

The undersigned herewith delivers and deposits a check in the amount of [$_____] representing the pro-rata share of undersigned toward the total cost of a sanitary sewer line designated the 50 Highway Main Sewer, to serve undersigned and other properties. The undersigned understands that Gibson and Bowles, Inc., contractors, will construct the sanitary sewer line as designed and engineered by Larkin and Associates. The undersigned has been advised that the total cost of construction will be One Hundred Eighty One Thousand Nine Hundred Eighty-Six and no/100 Dollars ($181,986.00).

The above sums shall be deposited with the City of Lee's Summit by each property owner no later than January 15, 1979. The city will then deposit all sums received by it in a trust fund, and investment earnings will be credited to said fund on the same basis as other city funds.

The undersigned has been advised that the property owners involved in this project are Midland Bank, Stanley Grace, Mercantile Stores, Inc., Dave Cross Motors, Missouri Public Service Company, Unity Village and the City of Lee's Summit, Missouri. Based upon the total cost of construction, the pro-rata share of each is as follows:

| | |
|---|---|
| Midland Bank | $ 17,566.00 |
| Stanley Grace | 5,126.00 |
| Mercantile Stores, Inc. | 72,358.00 |
| Dave Cross Motors | 3,277.00 |
| Missouri Public Service | 52,434.00 |
| Unity Village | 19,225.00 |
| City of Lee's Summit | 12,000.00 |
| Total | $181,986.00 |

Undersigned, as escrow depositor, does further understand that in order to construct said sanitary sewer, a permanent easement will be required over, along or through property of undersigned, 15 feet in width, being 7½ feet on either side of a center line as determined by engineers and located as shown on the drawing appended hereto and made a part hereof, together with a sufficient area on either side of said permanent easement to construct this line. Also appended hereto are construction plans for said sewer as prepared by Larkin and Associates. The sanitary sewer easement shall be on a standard form for this purpose.

The undersigned does hereby acknowledge that the City of Lee's Summit, Missouri is acting as escrow holder only and neither assumes nor undertakes any other responsibility in connection with the sanitary sewer line project. The undersigned does instruct the city as escrow holder to release the funds deposited herewith plus investment earnings to contractor upon completion of the sanitary sewer line and its inspection by the city staff and acceptance by the city.

Dated this _____ day of _____, 19\_\_\_\_.

[the individual property owner]

PROPERTY OWNER

CONCURRED & ACCEPTED:

GIBSON & BOWLES, INC.

/s/W.R. Gibson , President

CONTRACTOR"

Each of the landowner defendants also executed an easement agreement in favor of the city granting a permanent sewer line easement 15 feet in width over each respective property. The above documents were

the only ones connected with this project disclosed by discovery or identified in the affidavits filed with respect to the motions for summary judgment.

Affidavits filed on behalf of various defendants showed that the fatal accident occurred either on the property of defendant Mersco or on public right of way adjacent to that land; and no part of the cave in of the trench occurred on the property of any other of the defendants. Answers to interrogatories by Gibson admitted that he visited various sites along the sewer project perhaps two or three times a week during the month or so it was in progress, sometimes in advance of the actual construction and sometimes while it was going on. His communication to persons engaged in the construction consisted of "[o]nly normal communications with Mr. Mehrer or the workmen concerning the work, how it was progressing, etc., particularly with reference to technical matters relating to the job."

The initial motion for summary judgment was filed by Cross on October 29, 1980, and his motion was sustained on June 23, 1981. Plaintiffs promptly requested reconsideration, but additional motions for summary judgment quickly followed on the part of MoPub, Graces and Unity School. Plaintiff thereupon requested additional time in which to respond so that further discovery then in progress might be completed. That request was shortly followed by a motion for summary judgment by the City. On August 31, 1981, the trial court overruled plaintiffs' motion to reconsider the June 23 order and sustained the MoPub motion for summary judgment.

On October 1, 1981, the trial court entered a memorandum opinion and various judgments as follows: 1. The request for additional time by plaintiffs for the taking of depositions was denied. 2. The motions for summary judgment or motion to dismiss filed by the following defendants were each sustained: Graces, the City, Unity School and Gibson. 3. The court acceded to the request of plaintiffs' attorney that all motions be shown as sustained as of the same given date and to that end all summary judgments were declared to be final and appealable as of October 15 if no further motions for summary judgment were filed, but otherwise the judgments were declared to be final and appealable as of October 23, 1981. 4. Defendants Midland and North Star were granted time until October 15, 1981, within which to file motions for summary judgment if they so desired, and if filed those motions would be ruled upon not later than October 23, 1981. 5. The court recited that motions for summary judgment and/or to dismiss filed by defendants Mersco and Mehrer had been denied and that defendant Western Electric had filed no responsive pleadings of any kind.

Thereafter on October 8, 1981, Midland and North Star each filed motion for summary judgment. Five days later, on October 13, 1981, plaintiffs requested leave to amend their petition, by alleging a new theory of action against Gibson, Midland, North Star, the City and the partners in the engineering firm doing business as Larkin and Associates, which was the "resident engineer" under the city ordinances and who had supervision of this project. The amended petition proposed to allege that at all times pertinent "defendant W.R. Gibson was acting for himself and as agent, servant and employee of defendants Midland Bank and Trust Company and North Star Investment Company; that said defendants Gibson, Midland and North Star were applicants for installation and construction of the sewer line and project to the city of Lee's Summit, Missouri . . . ." The amendment further proposed to allege that Gibson acting for himself and on behalf of Midland and North Star applied to the City through Gibson & Bowles for authority to construct a sewer line to benefit the properties of Midland and North Star and that Gibson's contact with the other property owners was on behalf of himself, Midland and North Star. The proposed amendment further alleged the project was under the direction, supervision and control of the City, to whom a construction permit had been issued by the Missouri Department of Natural Resources and who had control over

Larkin and Associates. Plaintiffs referred in their proposed amended petition and attached thereto a copy of certain portions of the City's ordinances dealing with the granting of permits for the construction of private sewers, these including Sections 33–235 and 33–241. Plaintiffs also asked for reconsideration and amendment of the order dated October 1, 1981.

On October 20, 1981, the trial court overruled the motion to reconsider the order of October 1, 1981, and also denied plaintiffs' application for leave to file an amended pleading. On October 22, 1981, the trial court also sustained the motion for summary judgment by defendants Midland and North Star.

On this appeal, plaintiffs assign error as to the grant of summary judgment in favor of each defendant movant. Their points may be reorganized for convenience and greater clarity by considering the contentions concerning the various defendants in the following groupings: (1) all defendant landowners except Midland, North Star and the City; (2) defendants Gibson, Midland and North Star; and (3) the defendant City.

## I.

■ The defendant landowners say they have no liability in this case because any negligence which occurred was that of Gibson & Bowles, an independent contractor, for whose tortious conduct they have no responsibility. That position correctly states the general rule. Restatement (Second) of Torts Section 409 (1965); *Underwood v. Crosby*, 447 S.W.2d 566 (Mo. banc 1969).

Plaintiffs counter with the theory that the work in question was inherently dangerous and that one who employs a contractor to do such work is responsible for the contractor's negligence. Restatement (Second) of Torts Sections 413, 416, 427 (1965); *Smith v. Inter-Cty. Telephone Co.*, 559 S.W.2d 518 (Mo. banc 1977).

However for plaintiffs' theory to be applicable, it is necessary that the defendants sought to be held responsible must have employed the contractor to do the work wherein the negligence occurred. Defendants contend that the landowners here each contracted solely with respect to work on his or its own respective property and that there was no joint employment of Gibson & Bowles which would make other landowners liable for an accident which happened on the property of Mersco.

This view of the situation by the defendant landowners finds support in *City of Independence v. Ott*, 135 Mo. 301, 36 S.W. 624 (1896), which is the only Missouri case which has been cited or found in point. In that case Ball sued the city for a fall into an excavation in front of the land of Payne. Payne and Ott had hired a contractor to erect business houses on their adjoining lots, which were to be constructed with a uniform front and with a common stairway between the two properties. Payne and Ott were each to pay the contractor in proportion to their respective front footage. After Ball recovered judgment against the City, the latter sued the executors of Ott to recover the amount of the judgment, costs and expenses. The Supreme Court held that the decisive questions were under whose direction and by whose authority had the contractor made this excavation under the sidewalk, and whose agent was he when he left the excavation unguarded? The court held that Ott had no liability for the contractor's negligence:

"If the contract, fairly construed, was a several contract between Payne, Ott and Smith,—that is to say, that Ott, while cooperating with Payne to secure uniformity in the architecture of their several buildings, simply agreed upon a common plan as to the front of the two buildings, and stipulated for the use of a common stairway, and yet there was no obligation on the part of Ott to pay for the building of Payne's house, and none whatever on the part of Payne to become liable in any way for Ott's house, but for convenience, merely, they figured upon the whole cost, and each was to pay and be responsible solely for his own building, and in no manner liable for the other's,— then it is plain that the excavation in

front of Payne's lot must be held to have been made, as a matter of fact, under the authority and by the command of Payne, and Ott had no part in causing it to be made.... Ott, Sr., then, having never employed Smith to make the excavation in front of Payne's lot, and having no contract with Smith, jointly or severally, to build Payne's house, it follows that any negligence of Smith or Payne in leaving the excavation unguarded cast no liability on Ott, and neither he nor his executors can be required to respond for any damages flowing therefrom...."

Applying the principle of *Ott* here, defendants MoPub, Graces, Unity School and Cross have no liability. The question is whether those defendants entered into a joint contract with Mersco under which all of those landowners contracted a joint undertaking with Gibson & Bowles. The facts disclosed by answers to interrogatories and affidavits shows that there was no such joint undertaking. Each of these landowners had contact only with Gibson, and each landowner agreed only to pay for that portion of the work done on his or its own property. This interpretation of the situation clearly appears from the terms of the Escrow Agreement. Under the terms of that document, each landowner agreed to pay only "the pro-rata share of the undersigned," and the specific sum due from each is identified and stated. It is to be noted that each landowner signed an individual contract with Gibson & Bowles, each separate from any other. There was no provision requiring overpayment if any other property owner defaulted. Furthermore, no individual property owner had any right to inspect or to control the acts of Gibson & Bowles beyond the boundary of his or its own respective property. Whether or not these parties entered into a joint undertaking depends upon their intention. 17A C.J.S. Contracts Section 350 (1963). Under the facts here, the only reasonable interpretation is that the parties intended separate, not joint obligations.

## II.

Wholly different considerations apply to defendants Gibson, Midland and North Star. Although plaintiffs' original petition placed Midland and North Star in the same posture as the other defendant landowners, the amendment to the petition proposed on October 13, 1981, depicted something entirely different. Defendants successfully resisted the granting of permission to file the amended petition, and they now say that the trial court's exercise of discretion in that regard should not be disturbed. Plaintiffs, on the other hand, claim that the refusal of permission to amend constituted an abuse of discretion.

Rule 55.33(a) provides that a party may amend his pleading by leave of court and that "leave shall be freely given when justice so requires." In this case justice did call for permission to amend. In the first place, when the first motion for summary judgment by Cross was sustained, discovery had not yet been completed. When other defendants also filed motions for summary judgment, plaintiffs unsuccessfully requested additional time to respond to those motions so that they might complete the taking of depositions. Furthermore, the request for leave to amend was filed before there was any ruling on the motions for summary judgment by Midland and North Star, two of the defendants vitally affected by the proposed amendment, and before any of the summary judgments became final.

The drastic remedy of summary judgment should be granted only with great caution. If there is any plausible theory upon which a plaintiff may be able to make a case, the granting of summary judgment is inappropriate. *See Scott v. Thornton*, 484 S.W.2d 312 (Mo.1972); *Engman v. Southwestern Bell Tel. Co.*, 591 S.W.2d 78 (Mo.App.1980). Under the additional and new facts which the plaintiffs sought to place before the court, they did have a tenable theory of recovery.

In the first place, they had a tenable theory under the provisions of Section 33–235 of the City Ordinances. That and related sections provide generally that in order

to obtain a permit from the City for the construction of an extension or local sewer line, the applicant must submit plans and specifications for approval by the City, the installation shall be at the applicant's expense, and the applicant shall enter into a contract containing a number of pertinent provisions. One is that the construction of the installation shall be "carried through to completion in an expeditious and proper manner." This is implemented by Section 33–241 which provides that the installation shall be under the direct supervision of a resident engineer who shall be employed by the applicant. Of very particular importance is Section 33–235(e) which provides that under the contract agreement with the City, the applicant shall covenant:

> "That the applicant shall be responsible for all damages, loss or injury to persons or property that may arise or be incurred in or during the progress of the work incident to said project without regard to whether or not the applicant, his agents, employees or contractors have been negligent, and that the city shall be by the applicant held and kept free and discharged of and from any and all responsibility and liability therefor of any sort or kind; that the applicant shall make good any damage that may occur in consequence of the work or any part thereof, and shall assume all blame, loss and responsibility of whatsoever nature by reason of neglect or violation of any federal, state, county or local laws, regulations and ordinances."

Under a somewhat similar provision, the Missouri Supreme Court has held that the contractor assumed a liability to persons who might suffer loss or injury by reason of the construction project, that liability being based upon the theory of third party beneficiary. *St. Joseph Light v. Kaw Valley Tunneling*, 589 S.W.2d 260 (Mo. banc 1979). Similarly here, Martinez must be considered as a third party beneficiary under Ordinance Section 33–235(e). It was held in *Ward v. Ely-Walker Dry Goods Bldg. Co.*, 248 Mo. 348, 154 S.W. 478 (1913) that a similar city ordinance requirement was for the benefit of an employee of a subcontrac-

tor, as well as for the protection of the general public.

Defendants argue that these provisions should not be interpreted as being for the benefit of the employee of a contractor, because paragraph 33–235(f) requires that the applicant will not commence work until he has obtained all insurance required, including Workmen's compensation coverage, and that the applicant will not permit any contractor to commence work until all similar insurance has been obtained. Defendants argue that the provision just mentioned excludes any intention to give any other protection to employees of independent contractors. We disagree. Subsection (f) of the ordinance merely means that the applicant must have Workmen's compensation insurance for his own employees and any contractor must have Workmen's compensation insurance for his employees. It would not be possible for an applicant to purchase Workmen's compensation coverage for any worker who was not his employee. The provisions of subparagraph (e) are in addition to those in subparagraph (f), and under subparagraph (e) these defendants can be liable as third party tort feasors, regardless of Workmen's compensation insurance carried by their contractor.

These defendants also argue that there is no evidence that any permit ever issued to them by the City nor is there any showing that these defendants entered into a contract with the City under the terms of Ordinance Section 33–235. The simple answer to that argument is that the evidence is not yet closed, and plaintiffs should be accorded an opportunity to make proof in these regards. In addition, it should be assumed, at least at this point, that the parties did act legally and obtained the required permit and entered into the required contract.

These defendants also argue that to make them liable under this section of the Ordinances would create an absolute liability without regard to fault, thereby clearly exceeding the City's authority and creating a constitutional due process problem. The

fallacy in this argument is that the nature of the liability in question is contractual, not in tort. *St. Joseph Light v. Kaw Valley Tunneling, supra.*

Apart from liability under the Ordinance, the new facts sought to be alleged and proved by plaintiffs would support a cause of action under common law principles. Under the facts proposed to be proved, defendants Gibson, Midland and North Star did assume responsibility for the whole project. There is no showing on the part of these defendants by affidavit or otherwise that they did not employ Gibson & Bowles for the entire sewer project. The answers of these defendants to interrogatories with respect to their arrangements with Gibson & Bowles is somewhat ambiguous. For example, in answer to an interrogatory asking whether Midland had any contract, agreement or understanding with Gibson and Bowles or with the City, Midland responded: "There was no written construction contract <u>as such</u> between this defendant and Gibson and Bowles, Inc. or the City of Lee's Summit, Missouri." (Underscoring added).

On this record there is far from "unassailable proof" as required by Rule 74.04(h) for the granting of summary judgment. Plaintiffs should have full opportunity to explore all informal conversations and arrangements between these defendants, including all inter and intra company memoranda and also all board resolutions and any other materials which would tend to explain the relationship between Gibson and the three companies in all of which he appears to have been the main and driving force and also between them and the City, and between them and Larkin and Associates.

Defendant Gibson seeks to escape all liability in this case on the basis of the decision in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo.App.1982). In that case, a workman received Workmen's compensation benefits as the employee of a corporation. He then sued the corporate president and production manager as third party tort feasors for failure to equip the machinery causing the accident with proper safety devices. It was held that there was no liability by the individual defendants for failure to perform duties assigned to them by the employer to supply a safe place to work.

Although *Badami* would protect Gibson from the charge in the original petition that he was in general control of the sewer project "as the executive officer of Gibson & Bowles, Inc.," that decision provides him no protection with respect to the allegations of the proposed amended petition. Recovery is sought under the amended petition against Gibson, not because of nonperformance of duty on behalf of Gibson & Bowles, but rather because of his alleged joint activities with or on behalf of Midland and North Star. To whatever extent he joined in that action as an officer of Gibson & Bowles, he was doing far more than merely failing to perform a duty of the employer Gibson & Bowles to furnish Martinez a safe place to work.

### III.

Under the original petition, plaintiffs sought to hold the City to liability as a landowner acting jointly with the other landowners in employing Gibson & Bowles. That theory of joint liability affords no basis for recovery for reasons already stated in Section I of this opinion.

Liability of the City may nevertheless exist under a different theory. The evidence so far presented leaves it uncertain as to the exact location of the fatal accident. The affidavit of Stanley Grace does state flatly that the cave-in occurred on the property of defendant Mersco. The affidavit of Gibson, however, raises a question as to whether the accident happened on the property of Mersco or on property owned by the City. The Gibson affidavit states: "[T]he sewer line ditch in which plaintiffs' decedent was killed was generally toward or conceivably a little beyond the east property line of the Mersco Realty Co., Inc. property and affiant is not positive that the accident site may not have been upon the west right-of-way line or slightly onto the right-of-way of what is commonly known as

Old U.S. 50 Highway; that at a date not exactly known to affiant, the Missouri State Highway Department deeded or otherwise transferred Old U.S. 50 Highway and its right-of-way to the City of Lee's Summit as and for a city street." The affidavit of John Mehrer also indicates the same kind of doubt as to the exact location of the point where Martinez was killed by the ditch cave-in.

These affidavits leave an unresolved question of fact as to whether the accident occurred on Mersco's property or whether it occurred on the old right-of-way now owned by the City. Because the answer to this factual question is not established by unassailable proof as required by Rule 74.-04(b), summary judgment should not have been entered in favor of the City.

Inasmuch as the summary judgment for the City must be reversed for the reason just stated, it becomes unnecessary and premature to rule now on questions affecting the City attempted to be raised by the proposed amended petition. Those questions have not yet been brought into focus by pleadings and have not been refined by discovery proceedings and legal arguments before the trial court. Moreover, possible recovery against the City on the basis of its ownership of the land on which the death occurred may render moot the alternative theory of liability advanced in the amended petition requested by plaintiffs.

The judgments in favor of defendants MoPub, Graces, Unity School and Cross are affirmed. The judgments in favor of defendants Midland, North Star, Gibson and the City are reversed and the cause as to them is remanded with directions to permit plaintiffs to amend their petition as to those defendants and to proceed against them as well as the remaining defendants.

All concur.